No. 49,274

STATE OF KANSAS, *Appellee,* v. HIRAM SANDERS, *Appellant.*

(578 P.2d 702)

Opinion filed May 6, 1978.

*Michael J. Peterson,* of Kansas City, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is a direct appeal by Hiram Sanders from his conviction by a jury of murder in the second degree of Thomas Furlow, K.S.A. 21-3402, and aggravated battery of Vonya Hodge, K.S.A. 21-3414. The defendant was sentenced to terms of not less than 45 years nor more than life for the murder, and not less than 15 nor more than 60 years for the aggravated battery, the sentences to run concurrently with each other, but consecutively to other sentences which he was serving at the time these sentences were imposed.

Defendant raises eight points which we will discuss later in this opinion.

Concisely, the evidence discloses that on Friday evening, November 19, 1976, the victims, Thomas Furlow, 28 years old, and Vonya Hodge, 18 years old, went for a drive in Kansas City, Kansas. They had been dating for some time. They stopped at several places, including an apartment where Thomas "shot up" heroin. Shortly after midnight, in the early hours of November 20, Thomas and Vonya returned to the apartment where they had been earlier in the evening. Thomas went in, and Vonya waited in

the car. She was seated on the passenger side. Thomas returned in about 15 minutes.

As Thomas approached, Vonya heard shots and saw Thomas fall near the rear of the car. The defendant, Hiram Sanders, then came around the car, opened the door on the driver's side, and shot Vonya twice. She was struck in the hip and in the shoulder. As soon as Sanders left, Vonya slid over and drove the car to her home; her brother took her to the hospital.

Thomas Furlow's body was found the next day near the scene of the shooting. A .22-caliber bullet was removed from Thomas's body by a pathologist, and another .22-caliber bullet was removed by a surgeon from Vonya Hodge's hip joint. A ballistics expert testified that in his opinion both bullets were fired from the same gun. Sanders was seen running after Thomas shortly before the shooting. Vonya identified Sanders as the person who shot her.

The first point raised is that the trial court erred in overruling defendant's motion to dismiss for the reason that the state failed to bring him to trial prior to the expiration of 90 days, contrary to K.S.A. 1977 Supp. 22-3402. Sanders was arraigned on January 21, 1977; thereafter he was in custody continuously until trial commenced 108 days later, on May 9.

K.S.A. 1977 Supp. 22-3402 reads in part as follows:

"(1) If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3).

"(2) If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within one hundred eighty (180) days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3).

"(3) The time for trial may be extended beyond the limitations of subsections (1) and (2) of this section for any of the following reasons:

. . . . . . . . . . . . . . .

"(d) Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than thirty (30) days may be ordered upon this ground."

This section, originally enacted as a part of the Code of Crimi-

nal Procedure which became effective in 1970, was first construed in *State v. Davis,* 209 Kan. 225, 495 P.2d 965 (1972). Chief Justice Fatzer, speaking for the court, said:

". . . The new act was intended to provide for the just determination of every criminal proceeding, and is to be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay. (K.S.A. 1971 Supp. 22-2103.) Section 22-3402 contains a new definition of the term 'speedy trial,' as used in Section 10 of the Bill of Rights of the Kansas Constitution. The purpose of the statute is to implement the constitutional guaranty of speedy trial. The new definition shortened the limitations for trial and are expressed in days after arraignment, rather than court terms after the filing of the indictment or information. . . ." (p. 227.)

And see, also, *State v. Sanders,* 209 Kan. 231, 233, 495 P.2d 1023 (1972).

The first subparagraph of the act is designed to provide trial within 90 days for persons held in custody only because of the pending charge. The second subparagraph applies to persons who are admitted to bond, and is inapplicable here.

Sanders was not held in custody *solely* because of the charges of murder and aggravated assault; between the time of arraignment and trial he was in custody by virtue of lengthy sentences imposed upon him for other felonies, unlawful possession of a weapon, aggravated battery, and aggravated battery of a law enforcement officer, as well as three concurrent one-year sentences for misdemeanor offenses. The first subparagraph of K.S.A. 1977 Supp. 22-3402, therefore, is inapplicable. One who is in custody, serving one or more sentences, is not being held "solely" by reason of a pending charge, and it is not required that trial on the pending charge be commenced within the 90-day period specified by the statute. However, such person is entitled to a speedy trial; that right is guaranteed by § 10 of the Bill of Rights. Trial was held within a reasonable time, and well within the time allotted for trial of those on bond. Sanders has not alleged that his defense was hindered or affected adversely by reason of the passage of time, and we find no prejudice.

Further, it appears that the trial court's calendar was congested, and the trial date was fixed by the court some 30 days in advance, and before 90 days had elapsed after arraignment. One continuance of 30 days beyond the original 90-day period may be ordered by the trial court when, because of other cases pending, the court does not have sufficient time to commence the trial of the case at

hand. K.S.A. 1977 Supp. 22-3402(3)(*d*). At any rate, trial was held promptly within the constitutional mandate, and we find no error.

Defendant's second claim of error is that Patricia *Noram* should not have been allowed to testify because she was not properly endorsed on the information as a prosecution witness. Her name was there shown as Patricia *Norman.* Her correct street address and telephone number were listed. Patricia *Noram* was listed correctly as a witness on the original complaint. Defense counsel discovered her true name, and was advised how to get in touch with her, several days before she testified. Defendant's rights were not prejudiced, and the trial court did not abuse its discretion in permitting her to testify.

Defendant's third point is that the trial court erred in failing to instruct on lesser degrees of homicide, voluntary manslaughter and involuntary manslaughter, and on simple battery of Vonya Hodge. The latter has not been briefed or argued, and is deemed abandoned.

The trial court is charged with the duty of instructing the jury not only as to the crime charged, but also as to all lesser crimes of which the accused might be found guilty under the information and upon the evidence. K.S.A. 21-3107. The information charged Sanders with homicide, murder in the first degree, and the court instructed on both first and second degree murder; the jury convicted defendant of the latter. The two degrees of manslaughter are, of course, lesser degrees of homicide.

Voluntary manslaughter is the unlawful killing of a human being, without malice, which is done intentionally "upon a sudden quarrel or in the heat of passion." The only evidence supportive of defendant's contention that voluntary manslaughter should have been instructed upon is the testimony of Patricia Noram, who lived in a first-floor apartment in the building near which the homicide occurred. She testified that there was a lot of noise at the back of the building, in the parking lot—screaming and banging and some glass breaking. The witness was in bed; she got up, telephoned an operator to call the police, and then looked outside. She saw four people run by — Thomas Furlow, Vonya Hodge, Hiram Sanders, and another man. Seconds later she heard shots; she counted eight of them. The defense was alibi, and the defendant's evidence did not bear upon the degree of homicide.

There was no evidence that the deceased and the defendant quarreled; no evidence that the quarrel was sufficient to cause the defendant to act on impulse without reflection; no evidence that the defendant was provoked; and no evidence upon which the jury could find that the defendant acted in the heat of passion. We have discussed sudden quarrel and heat of passion in recent cases, and need not repeat what we said there. *State v. Ritchey,* 223 Kan. 99, 573 P.2d 973 (1977); *State v. Coop,* 223 Kan. 302, 573 P.2d 1017 (1978). But it is clear that there was no evidence before the jury in this case which would tend to establish the elements of voluntary manslaughter.

Likewise, there was no evidence that the killing was unintentional, and thus the involuntary manslaughter statute does not apply. We conclude that the trial court did not err in refusing to give the requested instructions on manslaughter.

As his fourth point, the defendant contends that the verdict should have been set aside because it was against the law and the evidence. The gist of this argument is that the testimony of Vonya Hodge should not have been believed. The defendant argues the credibility of the witness. That was a question for determination by the jury. The issue here is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence was sufficient to form the basis for a reasonable inference of guilt. *State v. Berry,* 223 Kan. 566, 575 P.2d 543 (1978). There is no merit to this contention.

As point five, defendant contends that the trial court erred in not instructing the jury to reject or to regard with caution the testimony of Vonya Hodge. The court gave the jury the customary instruction on credibility of witnesses, combining PIK Crim. 52.09 and PIK Civ. 2.20. The court also included the substance of PIK Civ. 2.24, relating to willful false testimony. The instructions given adequately covered the matter; to single out the testimony of one witness, as defendant suggests, would be for the court to inject itself into argument, which is properly left to counsel, and into a determination of the weight and credit of the testimony, which is properly a jury function. See *State v. Lee,* 221 Kan. 109, 112, 558 P.2d 1096 (1976). The court did not err in the instructions given.

Sixth, defendant contends that the trial court erred in not compelling Herbert Horton to testify. Horton had previously

given a statement to the prosecutor. He had been cooperative, and had been interviewed by defense counsel. A conference was held in chambers immediately before Horton was to testify during trial. Horton's attorney advised counsel and the court that Horton would refuse to answer any question about the substance of this case on the ground that his answers might tend to incriminate him. In chambers, defense counsel suggested that he be allowed to read Horton's earlier statement. Horton stated that he gave the statement, but it was not a true statement and was not accurate. Defense counsel then said:

"MR. PETERSON: Your Honor, we would like this: If the jury would be recalled, I would ask Mr. Horton his name and his address and then at that time Mr. Asner can interrupt and can be put on the record in front of the jury that Mr. Horton is refusing to testify on the ground he might incriminate himself."

This procedure was followed. When trial resumed before the jury, Horton was called as a defense witness, gave his name, and objected to answering any questions about the case on Fifth Amendment grounds. The court then said, "I don't see any reason to hold him here further"; defense counsel said, "No"; and the witness was excused.

Defendant now argues that it was error to excuse the witness, and that he should have been compelled to testify as to those matters he had previously discussed with defense counsel and the prosecutor; and that he had waived his Fifth Amendment privilege as to the subject matter of those interviews, pursuant to K.S.A. 60-437. This was not argued during the trial; Horton was excused without any request being made to the court to require him to testify on the basis of waiver.

K.S.A. 22-3417 reads in part as follows:

". . . It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him."

The defendant did not make known to the court the action which he now says he desired; and he did not object to the witness's being excused. Whether as a matter of trial strategy or otherwise, the witness was presented to the jury as a defense witness for the sole purpose of having him assert his constitutional privilege. No effort was made to compel his testimony.

Absent a presentation of the matters and an assertion of defendant's contentions during trial, we will not review them on appeal. The oft-repeated rule is, an issue not presented to the trial court cannot be a subject for appellate review. *State v. Osbey*, 213 Kan. 564, 568, 517 P.2d 141 (1973).

The seventh point raised is that the court erred in refusing to receive into evidence the written and sworn statement of Herbert Horton, taken earlier by the district attorney. Defendant contends that once Horton took the Fifth Amendment and refused to testify, he was "unavailable as a witness" within the meaning of K.S.A. 60-459(*g*)(1), and therefore the statement was admissible under K.S.A. 60-460(*a*) and (*c*). These statutes read as follows:

K.S.A. 60-459. **Definitions.** "As used in K.S.A. 60-460, its exceptions and in this section:

. . . . . . . . . . . . . . .

"(*g*) 'Unavailable as a witness' includes situations where the witness is (1) exempted on the ground of privilege from testifying concerning the matter to which his or her statement is relevant . . ."

K.S.A. 60-460. **Hearsay evidence excluded, exceptions.** "Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

"(*a*) *Previous statements of persons present.* A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness;

. . . . . . . . . . . . . . .

"(*c*) *Depositions and prior testimony.* Subject to the same limitations and objections as though the declarant were testifying in person, (1) testimony in the form of a deposition taken in compliance with the law of this state for use as testimony in the trial of the action in which offered, or (2) if the judge finds that the declarant is unavailable as a witness at the hearing, testimony given as a witness in another action or in a preliminary hearing or former trial in the same action, or in a deposition taken in compliance with law for use as testimony in the trial of another action, when (*i*) the testimony is offered against a party who offered it in his or her own behalf on the former occasion, or against the successor in interest of such party, or (*ii*) the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive similar to that which the adverse party has in the action in which the testimony is offered, but the provisions of this subsection (*c*) shall not apply in criminal actions if it denies to the accused the right to meet the witness face to face;"

The substance of the trial court's ruling was that the witness was not available for cross-examination, and that the statement was wholly hearsay, in that Horton had no personal knowledge,

but related only what a third party, James Doss, had told him, and therefore the content of the statement would not be admissible if made by Horton while testifying.

The statement was not a deposition taken for use in this trial; it was not testimony given in another action, or in a preliminary hearing or a former trial in the same action; and it was not a deposition taken for use in the trial of another action. The statement did not come within the exceptions provided by K.S.A. 60-460(c).

In chambers, Horton repudiated the statement, at least in part, saying that it was not totally accurate and truthful. Obviously, though the district attorney took the statement, the state would wish to examine the witness further. Horton, however, was not available for cross-examination. The statement itself was a recitation of statements allegedly made by Doss to Horton. Although Doss was physically present in the courtroom pursuant to a subpoena, neither party called him to testify, and there was no showing that he was available as a witness. In light of the statements attributed to him by Horton, Doss could well have refused to testify on Fifth Amendment grounds.

We conclude that the trial court was correct in its ruling, and that the statement of Horton was inadmissible under K.S.A. 60-460(a) as well as 60-460(c).

Defendant's eighth and final point is that the trial court erred in admitting a Kansas City, Kansas, Police Department fingerprint card into evidence at the sentencing hearing. The court admitted certified copies of two journal entries and fingerprint cards from the Kansas State Penitentiary, and a fingerprint card from the Identification Bureau of the Kansas City, Kansas, Police Department. The director of that bureau testified that the latter card bore the fingerprints of the defendant, taken on March 26, 1976, and retained in the regular course of business; and that all three sets of fingerprints were made by the same person. The journal entries reflect that Sanders was previously convicted of voluntary manslaughter, burglary in the second degree, and larceny, all in the District Court of Wyandotte County, and was sentenced to the Kansas State Penitentiary in each instance.

Defendant's objection to the police department card is that the fingerprints thereon were not taken by or in the presence of the witness. The prints were taken and the card retained in the usual course of business by the Identification Bureau.

The principal case relied upon by the defendant, *State v. Foster,* 198 Kan. 52, 422 P.2d 964 (1967) is easily distinguished. There, an uncertified photographic copy of a blood alcohol test report, received from the State Board of Health's laboratory by a Highway Patrol trooper, was admitted in evidence by the trial court upon the trooper's testimony alone. We reversed, holding that the report was not a "business record" of the trooper's office; that it was specially prepared by the laboratory in anticipation of litigation; and that it was error for the trial court to admit the document without proper foundation, *i.e.,* the testimony of a witness who could identify the report and explain methods and procedures used in its production.

Fingerprint cards, unlike laboratory reports of sophisticated chemical or spectrographic analyses, do not require an explanation of methods and procedures used; the taking of fingerprints is commonplace. The card in question was not prepared in anticipation of litigation; it was but one of thousands of such cards maintained by the police department.

We conclude that the card was admissible in evidence under the business records exception to the hearsay rule, K.S.A. 60-460($m$).

Finding no error, we affirm the judgment.