No. 74,199

STATE OF KANSAS, *Appellee*, v. ANDREW GREEN, JR., *Appellant*.

(920 P.2d 414)

Opinion filed July 12, 1996.

*John R. Kurth*, of Garrity, Kuckelman & Kurth, of Atchison, argued the cause and was on the brief for appellant.

*Kevin C. Fletcher*, assistant attorney general, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: On May 22, 1993, a disturbance took place at the Lansing Correctional Facility. Officer Mark Avery was killed and Officer Michael Bidatsch was severely beaten. A number of inmates were implicated. Several have been tried and convicted. We have handled several of those appeals. Andrew Green, Jr., an inmate at the Lansing facility, was also charged with and convicted of murder in the first degree and aggravated battery on a law enforcement officer. He appeals his conviction, raising numerous errors. One of the errors raised involves the sufficiency of evidence. We, therefore, recount the facts upon treatment of that error. We conclude that there is no reversible error and, for the reasons set forth below, affirm.

## Preliminary Hearing

The defendant contends that his convictions must be reversed because he was not given a preliminary hearing within 10 days after his first appearance and because he was never given a preliminary hearing.

The defendant concedes that the statute setting a 10-day period for the holding of a preliminary hearing (K.S.A. 22-2902), is directory and not mandatory. See *State v. Fink*, 217 Kan. 671, Syl. ¶ 3, 538 P.2d 1390 (1975). Moreover, the defendant acknowledges that he was indicted by a grand jury but still claims he was entitled to his statutory right to a preliminary hearing. Very recently, we rejected this precise contention in the case of *State v. Knighten*, 260 Kan. 47, Syl. ¶¶ 4, 5, 917 P.2d 1324 (1996).

"The purpose of a preliminary examination is to afford the person arrested, as the result of a complaint, an opportunity to challenge the existence of probable cause for further detaining him or her. This right is purely statutory and is not required by the Constitution; therefore, it does not implicate due process."

"K.S.A. 22-2902(1) provides a means for testing whether there is probable cause that a crime has been committed and whether the defendant committed the crime. This statute recognizes that once a grand jury indictment has been handed down, such a test has occurred. It matters little whether the grand jury indictment is handed down before or after the defendant is charged with the crime. In either case, a determination of probable cause has been made. The fact that the indictment came after and not before the arrest and charge is not grounds for reversal."

## Speedy Trial

The defendant contends that he was denied his statutory and constitutional right to a speedy trial because his trial was not commenced until 15 months after the complaint had been filed against him. The defendant was arraigned on November 12, 1993; trial commenced on November 14, 1994.

There is no merit to the defendant's contention that he was denied his statutory right to a speedy trial. He had been convicted in Sedgwick County of seven counts of kidnapping and three counts of battery and was serving those sentences at the time of this incident, May 22, 1993. K.S.A. 22-3402(1) provides:

"(1) If any person charged with a crime and *held in jail solely by reason thereof* shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)." (Emphasis added.)

Because the defendant was being held for reasons other than the charges stemming from the May 22, 1993, attack, his statutory right to speedy trial was not violated. See *State v. Goss*, 245 Kan. 189, 191, 777 P.2d 781 (1989).

The defendant also contends his constitutional right to a speedy trial was violated. He assigns 288 days out of a total of 427 days as attributable to the State in bringing the matter to trial. The leading case on this issue is *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972). In *Barker*, the United States Supreme Court adopted a four-prong case-by-case approach for determining

whether any given defendant has been deprived of his or her right to a speedy trial (length of delay, reason for the delay, the defendant's assertion of his or her right, and prejudice to the defendant). 407 U.S. at 530. This balancing test was adopted in Kansas in *State v. Otero*, 210 Kan. 530, 502 P.2d 763 (1972). However, our court later noted that if the length of delay was not presumptively prejudicial, then the other factors of the test need not be considered. *State v. Goss*, 245 Kan. at 193.

In *Barker*, a 5-year period of time was not in violation of the right to a speedy trial. In *State v. Goss*, this court found a delay of a little over a year between arrest and trial not clearly presumptively prejudicial, so the *Barker/Otero* test did not need to be applied. 245 Kan. at 193. In the present case, the delay in time between the defendant's arraignment and trial was 1 year and 2 days. According to *Goss*, this length of delay is not presumptively prejudicial to the defendant, and we need not consider the other three. factors of the *Barker/Otero* test.

Nevertheless, the defendant claims prejudice by the delay because he alleges that three of his witnesses became unavailable because of the delay. It is true that two inmates were released because each of their sentences expired and a third was paroled to the State of Nebraska. However, the witnesses were available just as any witness would be available. The defendant never availed himself of the process to make such witnesses available. The State had no responsibility or power to hold these witnesses beyond their release or parole date. The defendant's argument of prejudice is without merit.

## Gang Membership Evidence

The defendant contends the trial court erred in allowing introduction of gang membership. He argues the evidence was highly prejudicial and requires reversal of his convictions. Within the context of a strikingly similar factual setting, we recently rejected the precise claim that the defendant now makes in our recent case of *State v. Knighten*, 260 Kan. at 54. We held that evidence of gang membership may be probative of witness bias:

"The probative value of evidence of gang membership as it pertains to witness bias is high. In *United States v. Abel*, 469 U.S. 45, 49, 83 L. Ed. 2d 450, 105 S. Ct. 465 (1984), the United States Supreme Court held that evidence of gang membership is probative of witness bias, and that '[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.' 469 U.S. at 52."

In this case, the State introduced evidence regarding gang membership through the testimony of Roger Bonner, investigator for the Lansing facility, in its case in chief and in rebuttal. The evidence of the defendant's gang membership was not offered to show the defendant committed the crimes charged or that he had a propensity to commit such crimes. Rather, Bonner's testimony was offered to show the defendant had lied in telling Sergeant H.R. Woodcock that he was not a gang member. In rebuttal, the State called Bonner back to the stand to impeach inmate Pool's statement that "B.G.D." was not a gang and his denial of knowledge as to whether the defendant was a member of "B.G.D." In addition, Bonner's testimony that Pool, a defense witness, and the defendant were considered to be members of the "B.G.D." gang served to impeach Pool's testimony. As we said in *Knighten*, "[s]imple friendship does not create the same inference of incentive to protect another person that is created by evidence of membership in the same gang." 260 Kan. at 55.

## Grand Jury

The defendant contends that the grand jury was not properly impaneled. However, the State, with a supplemental addition to the record, demonstrated that it was properly summoned by an order of the majority of district judges for the First Judicial District in accord with K.S.A. 22-3001(1). The defendant also contends that the grand jury did not request the prosecuting attorney to attend and question witnesses in accord with K.S.A. 22-3007(1) and (2). Again, however, the record reflects that the county attorney was present and questioned witnesses with the approval of the grand jury.

## Sufficiency of Evidence

The defendant contends that there was insufficient evidence for the jury to have found him guilty of either the murder of Avery or the aggravated battery of Bidatsch. He argues that only one of the witnesses, Byron Wash, testified to seeing the defendant strike Avery with a weight and that no witness positively identified him as having any part in the beating of Bidatsch.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Knighten*, 260 Kan. 47, Syl. ¶ 1; *State v. Timley*, 255 Kan. 286, Syl. ¶ 13, 875 P.2d 242 (1994).

A review of the record shows numerous witnesses who incriminated the defendant as to both crimes charged. Dr. Clark Anderson, the pathologist performing the autopsy on Avery, testified that Avery's death was caused by multiple blunt traumatic injuries to the body, particularly the head, and that the blunt trauma was consistent with being hit by a weight plate and a pool ball. Dr. Anderson also testified that there was a boot print on Avery's back.

Officer Ronald Clark testified that he saw the defendant in the area where Avery was lying in a pool of blood.

Inmate Joe Campbell testified he heard some inmates talking right before the crime, near the scene of the crime, and those inmates included the defendant and others who have been charged with the same crime. Campbell stated that during this conversation, an inmate named Clemons told Campbell, "We are getting ready to do this pussy." Campbell heard Clemons encouraging the defendant to "Just do it," to which the defendant replied, "Man, hold up and I'll do it." Campbell then saw the defendant pick up a 10-pound weight. Although Campbell also saw the defendant set it back down, Campbell then saw the defendant and inmate Travis Knighten, who has also been charged with and convicted of these crimes, crawl over the stub wall and go towards the officers, with Knighten holding a weight.

Another inmate, Claire Jobe, III, testified that he saw the defendant near the ice machine with a weight in his hand. Bidatsch testified that he was hit with a weight plate while he was standing near the ice machine.

Inmate Wash testified that he saw the defendant hit Avery in the back of the head with a weight plate while Avery was kneeling down. He also stated that he saw the defendant kicking Avery after Avery was face down on the floor. While they were in administrative segregation after the incident, Wash overheard the defendant singing, "Two to the head and another one dead."

Sergeant Woodcock testified that, in his investigation immediately following the incident, inmate Campbell had said that other inmates were trying to get the defendant to attack the officers and that the defendant struck Avery.

Inmate Marquis Holmes, a witness for the defense, testified that the defendant was the initial person who attacked Bidatsch.

Bidatsch testified as to how he was attacked and beaten. Although he could identify some of the inmates who attacked him, he could not identify all of those who struck him among the 200-300 inmates in the recreational shack that day.

As the State points out in its brief, the evidence in this case is both direct and circumstantial. A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Smith*, 245 Kan. 381, Syl. ¶ 7, 781 P.2d 666 (1989).

The defendant argues that because many of the stories given by the inmates are inconsistent with the testimony of Bidatsch and with the testimony of each other, they are not credible. The defendant also argues that the statements of inmates Wash and Jobe directly implicating him were not credible because both of those inmates had allegedly been suspects themselves until they gave statements implicating the defendant.

However, it is well established that this court does not pass on the credibility of witnesses or weigh conflicting evidence and all questions of credibility are resolved in favor of the State. *State v. Van Winkle*, 254 Kan. 214, 225, 864 P.2d 729 (1993). It was for the jury to decide the credibility of the witnesses, the weight to be given the evidence, and the reasonable inferences to be drawn

from the evidence. See *State v. Bowen*, 254 Kan. 618, 631, 867 P.2d 1024 (1994). The jury in this case resolved the credibility of the witnesses in such a way as to find the defendant guilty beyond a reasonable doubt. The verdict is supported by the evidence, and we will not disturb it on appeal.

## Admissibility of Evidence

The defendant contends the trial court erred in admitting into evidence a threatening letter received by inmate Wash. During the State's direct examination of Wash, the court admitted the letter over defense counsel's objection. The letter was written by an inmate named Brooks; there was no evidence that the defendant had any part in the writing or delivery of the letter.

The admissibility of evidence is governed by its relevancy to the issue in question. *State v. Toney*, 253 Kan. 651, 654, 862 P.2d 350 (1993). The exclusion of evidence is within the discretion of the trial court. *State v. Toney*, 253 Kan. at 654. The letter at issue intimidated Wash regarding his decision to testify at this trial. As such, it tends to show that Wash was not testifying for any personal benefit and actually was testifying at risk to himself. These circumstances are relevant as to Wash's motive in testifying as well as to his credibility as a witness. According to K.S.A. 60-420, for the purpose of impairing or supporting the credibility of a witness, any party, including the party calling the witness, may examine the witness and introduce extrinsic evidence concerning any conduct by the witness and any other matter relevant to the issue of credibility. See *State v. Franklin*, 206 Kan. 527, 528, 479 P.2d 848 (1971); *State v. Armstrong*, 207 Kan. 681, 687, 486 P.2d 1322 (1971). The record contains no indication that the letter was offered for any other purpose. Therefore, the letter was probative and relevant and its admission was not error.

## Aiding and Abetting Instruction

The defendant contends that the trial court erred by instructing the jury, over objection, on aiding and abetting. The defendant acknowledges our decision in *State v. Pennington*, 254 Kan. 757, Syl. ¶ 4, 869 P.2d 624 (1994), wherein we stated:

"The State need not charge aiding and abetting in the charging document in order to pursue an aiding and abetting theory at trial. If, from the totality of the evidence, a jury reasonably could conclude that the defendant aided and abetted another in the commission of the crime, then it is appropriate to instruct the jury on aiding and abetting."

However, the defendant contends there was no evidence to support the giving of an instruction on aiding and abetting.

A review of the evidence set forth above in discussing the defendant's allegation of insufficiency of evidence establishes that a jury reasonably could conclude that the defendant aided and abetted another in the commission of the crimes. The trial court did not err in instructing the jury on aiding and abetting.

### New Trial

Finally, the defendant contends he is entitled to a new trial by reason of all the errors raised above. Because those errors upon review lack merit, they provide no basis for a new trial.

Affirmed.