No. 74,423

STATE OF KANSAS, *Appellee,* v. DOUGLAS LEON RAY ABEL, *Appellant.*

932 P.2d 952

Opinion filed January 24, 1997.

*William K. Rork,* of Rork Law Office, of Topeka, argued the cause and was on the brief for appellant.

*James A. Brown,* assistant district attorney, argued the cause, and *Joan M. Hamilton,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant Douglas Leon Ray Abel appeals his convictions of one count of felony murder, one count of aggravated burglary, and one count of aggravated robbery. On appeal defendant claims that (1) he was denied his constitutional right to speedy trial; (2) the trial court erred in failing to give an accomplice jury instruction and an instruction on informant testimony; and (3) the

evidence was insufficient for the jury to conclude beyond a reasonable doubt that he was guilty of the crimes charged.

This case arises from the same facts as those discussed in greater depth in *State v. Noriega*, 261 Kan. 440, 932 P.2d 940 (1997). Douglas Leon Ray Abel and Ramon A. Noriega were each charged with felony first-degree murder, aggravated burglary, aggravated robbery, and theft. The theft charge was dismissed prior to the jury being instructed. A jury convicted both Abel and Noriega of felony first-degree murder, aggravated burglary, and aggravated robbery. This court affirmed Noriega's conviction. In his appeal Abel raises three of the same issues raised by Noriega. The factual statement and discussion of these issues is essentially the same as set out in *State v. Noriega.*

Sidney Robinson, the deceased, resided alone at 417 NW Fairchild in Topeka. On January 11, 1994, his body was found in his back yard clothed in a T-shirt and boxer shorts. He had last been seen alive on January 9, 1994. Robinson was a coin collector, and some of his coins and his 1979 Lincoln Continental were missing. An autopsy indicated Robinson had sustained three bullet wounds: one to his right lower leg, one to his left back, and one to his right lower back. The coroner testified at trial that the back wounds were fatal. He was unable to determine an exact time of death.

At trial, the State alleged that, after an evening of drinking at a nearby tavern, the Twilighter, Abel and Noriega stole valuable coins from Robinson's collection at gunpoint in the early morning hours of January 10, 1994, and then shot Robinson three times. Several witnesses testified for the State. During the police investigation of the murder, two of the State's witnesses, Larry Baier and Bobby Shutts, at first denied having any information, then gave false information, and finally implicated the defendants as the individuals who committed the crimes.

At the trial Baier testified that, at first, he had lied to the police several times when the police interviewed him concerning the crime. Baier also admitted that after the police removed Robinson's body, he entered Robinson's home and took some food and a wheathead penny. He also testified that he had prior convictions of aggravated burglary and that he was on parole at the time of the

shooting. Baier stated that prior to the final police interview when he identified Abel, the police booked him for a parole violation, told him he was a suspect in the murder, and informed him that if he would cooperate with police, they would attempt to keep him out of prison.

Bobby Shutts had hired an attorney and, after being granted immunity from prosecution for all crimes connected with the incident except murder, agreed to be a witness for the State. Shutts testified that Abel visited Shutts at his home on January 9, 1994. Abel showed him a chrome .380 semiautomatic pistol with bullets in the clip. Noriega later arrived at Shutts' house, and the three ended up at the Twilighter tavern for a night of drinking. Abel had left the gun at Shutts' house. The group left the Twilighter at closing time. A few minutes after returning home, Abel visited Shutts to get his gun. Shutts testified further that "within the next day or two," Abel visited him again, gave Shutts some coins, and asked him to sell them. Shutts sold most of the coins for $200 to "some black guys" and threw the rest in the river. He kept $50 for himself and split the remaining amount between Abel and Noriega. He testified he gave Abel the money the next weekend and gave Noriega the money a couple of days later after Noriega telephoned him to ask if Shutts had the money. Shutts testified further that Abel had told him on the telephone that he (Abel) had "fucked up" and "[w]hen they got the coins, something went wrong." The next weekend Abel told Shutts he had disassembled the gun and thrown it in the Kansas River. Shutts admitted he had lied to the police when first questioned about the murder.

## SPEEDY TRIAL

Abel contends his statutory right to a speedy trial was violated. A person held in jail must be tried within 90 days after that person's arraignment. K.S.A. 22-3402(1). The relevant facts are: Noriega and Abel were bound over for trial and formally arraigned on December 15, 1994. Both remained in custody. The case was set for jury trial on February 13, 1995. On February 3, 1995, the State moved for a continuance on the grounds that, despite diligent efforts, it had been unable to secure the presence of Larry Baier and

Bobby Shutts. Over defendant's objection, the district judge granted a continuance to April 3, 1995. See K.S.A. 22-3402(3)(c). In granting the continuance, which exceeded the statutory 90-day limitation, the district judge relied on the State's proffer that a warrant and subpoena had been issued for Shutts and that it had been unable to find or serve Baier because he had left the state. Subsequently, the defendant filed a motion to be discharged from prosecution, alleging that with respect to Baier, the district attorney investigator had filed a return of service with the clerk of the court indicating that he had personally served Baier with a subpoena on February 1, 1995.

Defendant, who had been held in jail for more than 90 days after his arraignment, filed his motion to discharge pursuant to K.S.A. 22-3402. At the hearing on the motion, defendant presented evidence that, contrary to the State's proffer at the hearing on the motion for continuance, the State had not served a subpoena or warrant on Shutts prior to February 6, 1995. Defendant also presented evidence contradicting the State's proffer regarding the efforts to locate Baier. Based on these facts, the defendant argued that the continuance had been improperly granted because, in fact, no warrant or subpoena had been issued for Shutts and the State had not been diligent in securing the presence of either necessary witness.

The district judge agreed with defendant that the continuance had been erroneously granted and that the State's efforts in locating witnesses had been perfunctory and not diligent. The district judge, however, found that K.S.A. 22-3402(1), the 90-day speedy trial statute, was not applicable in defendant's case because defendant was being held in jail on another charge, a parole violation. Therefore, the defendant was not being held solely on the charges in the instant case.

K.S.A. 22-3402(1) provides:

"If any person *charged with a crime and held in jail solely by reason thereof* shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged; unless the delay shall happen as a result of the

application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)." (Emphasis added.)

The district judge concluded that, under the circumstances, the defendant was entitled to be brought to trial pursuant to K.S.A. 22-3402(2), which provides a 180-day speedy trial period; therefore, the April 3, 1995, trial date was well within the statutory time frame.

A similar issue was recently addressed in *State v. Hill*, 257 Kan. 774, 895 P.2d 1238 (1995). In *Hill*, the defendant was on parole when charged with felony crimes on August 29, 1992. On August 31, 1992, the defendant's parole officer placed an arrest and detain order against the defendant for failure to comply with conditions of parole. Hill was held in jail on that order, as well as the new felony charges, until his trial on June 14, 1993, more than 90 days after his arraignment, which occurred on October 26, 1992. Hill's parole officer testified that the arrest and detain order would have remained in effect even if the State had dismissed the charges. The *Hill* court found that the district judge did not abuse his discretion in denying Hill's motion to dismiss on speedy trial grounds and that there was substantial competent evidence to support the district judge's determination that Hill was not held in jail solely on the charges therein. 257 Kan. at 778.

A person being held in jail not solely for the crime charged is not entitled to be brought to trial within 90 days after the person's arraignment but is entitled to be brought to trial within 180 days after the person's arraignment. Abel was not denied his statutory right to a speedy trial.

## ERRORS IN INSTRUCTION

Abel contends that the trial court committed several errors in instructing the jury. Abel made no objection to these instructions at trial, nor did he request any of the instructions he now claims the trial court erred in failing to give. No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he or she objects and the grounds for the objection, unless the instruction is clearly erroneous. K.S.A.

22-3414(3). The giving or failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that absent the alleged error there was a real possibility the jury would have returned a different verdict. *State v. DePriest*, 258 Kan. 596, 605, 907 P.2d 868 (1995); *State v. Crawford*, 255 Kan. 47, Syl. ¶ 5, 872 P.2d 293 (1994).

## Cautionary Instructions

First, Abel claims error in the trial court's failure to give cautionary instructions regarding accomplice and paid informant testimony with respect to Baier and Shutts. As to the accomplice instruction, PIK Crim. 3d 52.18 defines an accomplice as one who testifies that he or she was involved in the commission of the crime with which the defendant is charged. Abel's argument that an accomplice instruction was required fails as there was no testimony that either Baier or Shutts acted as accomplices in the murder, aggravated burglary, or aggravated robbery charged.

Abel also asserts that the trial court erred in failing to instruct the jury that it should consider the testimony of an informant with caution. Abel argues that because the police did not revoke Baier's parole or charge Shutts with crimes that occurred subsequent to the murder, both were informants who received benefits from the State in exchange for their testimony. PIK Crim. 3d 52.18-A provides:

"You should consider with caution the testimony of an informant who, in exchange for benefits from the State, acts as an agent for the State in obtaining evidence against a defendant, if that testimony is not supported by other evidence."

An informant is an "undisclosed person who confidentially discloses material information of a law violation, thereby supplying a lead to officers for their investigation of a crime. [Citation omitted.] This does not include persons who supply information only after being interviewed by police officers, or who give information as witnesses during the course of investigation." Black's Law Dictionary 780 (6th ed. 1990).

Baier and Shutts were individuals who supplied information only after being interviewed by police officers. They later gave addi-

tional statements during the course of the investigation. Neither witness was an informant. Under the facts, the giving of a "paid" informant cautionary instruction was not required.

## SUFFICIENCY OF THE EVIDENCE

In denying the defendant's motion for judgment of acquittal at the close of the State's evidence, the trial judge stated:

"Well, I guess I could say that if there was ever a case where a defense motion for acquittal might be appropriate at this juncture, this might be one. The nexus or connection between the activities at the home of the deceased and these two defendants is very tenuous, and that's, that's the major difficulty that I have with denying the defendant's motion. But I do deny such. It seems to me that the credibility of the state's witnesses is the key, and if the jury believes the latest story that these two individuals told, together with the circumstantial evidence, that a reasonable trier of fact could come up with the conclusion that these two defendants are guilty of the three crimes charged against each of them."

On appeal, Abel argues that there was insufficient evidence for the jury to conclude beyond a reasonable doubt that he was guilty of the underlying felonies of aggravated burglary and aggravated robbery and, therefore, of felony murder.

When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, an appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 255 Kan. 252, Syl. ¶ 6, 874 P.2d 623 (1994), *State v. Van Winkle*, 254 Kan. 214, Syl. ¶ 5, 864 P.2d 729 (1993), *cert. denied* 511 U.S. 1144 (1994); *State v. Ferguson*, 254 Kan. 62, Syl. ¶ 4, 864 P.2d 693 (1993). A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Bradford*, 254 Kan. 133, Syl. ¶ 2, 864 P.2d 680 (1993).

The jury found Abel guilty of both underlying felonies of aggravated burglary and aggravated robbery as well as felony murder. Aggravated burglary is "knowingly and without authority entering into or remaining within any building . . . in which there is a human being, with intent to commit a felony, theft or sexual battery therein." K.S.A. 21-3716. Aggravated robbery is a robbery com-

mitted by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery. K.S.A. 21-3427. Felony murder is the killing of a human being committed in the commission of an inherently dangerous felony. K.S.A. 21-3401.

The evidence at trial revealed that Robinson was shot three times, both inside and outside the house, and that two of the shots were fatal. Evidence supported inferences that Robinson's house had been broken into and that items from his house were stolen. The additional evidence was that Noriega, Abel, and Shutts all left Shutts' house together to go drinking on the evening of the crime. Several witnesses saw Shutts, Noriega, and Abel drinking together at the Twilighter. Baier identified Abel and Noriega as the two men he saw running away from Robinson's house shortly after Baier heard shots fired. Shutts testified that Abel had left a gun of the same general type used to commit the murder at Shutts' house before the group left for the Twilighter. Shutts testified that a few minutes after he returned from the Twilighter, Abel retrieved the gun. Shutts also testified that he distributed proceeds from the sale of coins evenly between Abel and Noriega. Shutts testified that Abel told him that "[w]hen they got the coins, something went wrong."

It is the function of the jury in a criminal case to determine the weight and credit to be given the testimony of each witness. On review, the credibility of witnesses will not be passed upon, conflicting evidence will not be weighed, and all questions of credibility are resolved in favor of the State. *Van Winkle*, 254 Kan. at 225. The credibility of the State's primary witnesses, Shutts and Baier, was brought into question throughout the trial. Both admitted lying to the police in having been involved in crimes subsequent to the murder prior to implicating the defendant. The jury had the opportunity to evaluate the evidence and the testimony of the witnesses. The jury obviously believed the State's witnesses and its theory rather than the evidence presented on the defendant's behalf. The evidence adduced at trial was sufficient for a reasonable factfinder to conclude that Abel was guilty beyond a reasonable

doubt of the underlying felonies of aggravated burglary and aggravated robbery as well as of felony murder.

Affirmed.