No. 77,181

STATE OF KANSAS, *Appellee*, v. WILLARD PARNELL MATHENIA, *Appellant*.

(942 P.2d 624)

Opinion filed July 18, 1997.

*Rhonda Keylon Levinson*, special appellate defender, argued the cause and was on the brief for appellant.

*Stephen D. Maxwell*, assistant attorney general, argued the cause, and *Kevin C. Fletcher*, assistant attorney general, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: Willard Parnell Mathenia appeals his convictions of premeditated first-degree murder, K.S.A. 21-3401, and aggravated

battery against a law enforcement officer, K.S.A. 21-3415. Mathenia's convictions resulted from the death of Officer Mark Avery and the severe injuries inflicted upon Officer Michael Bidatsch at Lansing Correctional Facility on May 22, 1993 (the Lansing incident). The primary issue concerns defendant Mathenia's constitutional right to a speedy trial.

The facts surrounding the Lansing incident are familiar to this court. See *State v. Clemons*, 261 Kan. 66, 929 P.2d 749 (1996) (convictions of first-degree murder and aggravated battery against a law enforcement officer affirmed); *Murphy v. Nelson*, 260 Kan. 589, 921 P.2d 1225 (1996) (reversing trial court order that prisoner alleged to have been a participant in the incident be released from segregation and returned to the general prison population and remanding for a K.S.A. 60-1501 hearing); *State v. Moore*, 260 Kan. 488, 920 P.2d 431 (1996) (affirming denial of motion to modify sentence after Moore pleaded to aggravated battery against a law enforcement officer); *State v. Green*, 260 Kan. 471, 920 P.2d 414 (1996) (affirming convictions of first-degree murder and aggravated battery against a law enforcement officer); *State v. Knighten*, 260 Kan. 47, 917 P.2d 1324 (1996) (affirming convictions of second-degree murder and aggravated battery against a law enforcement officer); and *State v. Harris*, 259 Kan. 689, 915 P.2d 758 (1996) (affirming convictions of first-degree murder and aggravated battery against a law enforcement officer). Our jurisdiction is under K.S.A. 22-3601(b)(1) (maximum sentence of life imprisonment).

## Mathenia's Issues

Mathenia advances four issues: (1) Were his statutory and constitutional rights to a speedy trial violated? (2) Were the grand jury proceedings deficient, rendering his indictment defective? (3) Was the evidence sufficient to find him guilty? and (4) Was evidence of gang membership or affiliation improperly admitted?

We find no error and affirm. We focus on the speedy trial issue because of factual differences from other Lansing incident cases. We disapprove of certain language in two recent cases, *State v.*

*Noriega,* 261 Kan. 440, 459, 932 P.2d 940 (1997), and *State v. Abel,* 261 Kan. 331, 335, 932 P.2d 952 (1997).

## FACTS

The facts of the Lansing incident are chronicled in *Harris,* 259 Kan. at 692-97, and *Knighten,* 260 Kan. at 48-52. Mathenia was one of 12 inmates against whom charges for first-degree murder and aggravated battery against a law enforcement officer were filed.

Three inmates gave eyewitness testimony of Mathenia's involvement: Tracy Hackney, Mikel Brooks, and Ronald Martin. Hackney described the recreation shack as "packed" with over 100 inmates inside to avoid the rain. Hackney first noticed an inmate fall down in front of the ice machine, his head bleeding. Two officers helped the injured inmate. Everyone "dog-piled" on the officers. One officer crawled away as inmates were hitting him, but the other, Officer Avery, was knocked unconscious and lay on the floor. Hackney saw Mathenia in the pile hitting and kicking the officers, but could not identify all of the inmates involved. Hackney saw, but did not identify during his direct examination, an inmate who dropped a weight plate on Avery's head. On cross-examination, Hackney admitted that in a statement he gave to investigators, he identified Gerald Mayfield as the only inmate he saw hitting Officer Avery with a weight plate.

Brooks observed an inmate get hit with a 25-pound weight plate in front of the ice machine. After the inmate fell, Brooks saw Mathenia hit Officer Avery in the head with a 25-pound weight plate so hard that it fell out of Mathenia's hands and rolled on the floor near Brooks. Brooks identified a 25-pound weight plate as looking like the one he saw Mathenia hit the officer with. Brooks saw Officer Bidatsch running from the weight room and slipping in some blood on the floor near Avery's body. Bidatsch made it out the door. The entire incident took about 6 seconds.

Martin saw someone in the recreation shack swing something at Officer Bidatsch and hit an inmate standing beside him. Bidatsch was trying to help the injured inmate. Inmates began punching and kicking Bidatsch. Martin saw Mathenia hitting and kicking Bidatsch

while Bidatsch was on his knees trying to crawl away. On cross-examination, Martin said he did not see Mathenia hit anyone with a weight plate. Martin saw Officer Avery standing in the doorway of the weight-lifting area when Avery was hit in the head with a weight plate, but could not identify who hit Avery.

Timothy Dennis, of the Kansas Bureau of Investigation (KBI), investigated the homicide. He found a 25-pound weight plate caked with dried blood at the scene. Four additional weight plates were also recovered.

Inmates testified on Mathenia's behalf. He also called two Lansing correctional officers as witnesses.

Mathenia denied any involvement in the attack, testifying that he was jogging on the outside track at that time. On cross-examination, Mathenia denied reenacting the beating of Officer Bidatsch with Midgyett (another inmate) in front of the tower and saying to Bidatsch, who was in the tower, words to the effect "that's what you deserve." Mathenia claimed that he and Midgyett were horse playing and talking about football. Mathenia admitted being acquainted with Folks (a gang) and talking with Folks members but denied being a Folks member or in a gang. Mathenia did not dispute that three of his inmate witnesses were Folks members. Mathenia admitted associating with all of the prison gangs because "[y]ou have got to live in this prison." He denied being recruited by any gang, but admitted receiving Folks materials.

Officer Bidatsch testified as a rebuttal witness for the State and described watching Mathenia and Midgyett acting out the Lansing incident in front of the tower.

Roger Bonner, an investigator at Lansing, testified in rebuttal that three of Mathenia's inmate witnesses and Mathenia were all being monitored as affiliates or members of the Folks gang. Bonner said Mathenia was being monitored for gang activity because: (1) there was evidence of his involvement in the attack on the two officers with other known gang members, and it was believed that gangs had perpetrated the attack; (2) Mathenia possessed a drawing with the word "Crips" (a group with which Folks was affiliated); and (3) Mathenia reportedly had papers containing numbers and

symbols and letters used by an affiliate of Folks. Bonner admitted that inmates do not have a chance to contest the classification.

## DISCUSSION

### The Constitutional Right to a Speedy Trial

Was Mathenia's constitutional right to a speedy trial violated? The four-part balancing test in *Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972), (length of delay, reason for the delay, the defendant's assertion of his or her right, and prejudice to the defendant) provides the standard of review.

*Barker* involved a delay of over 5 years between Barker's indictment (along with a codefendant) and his murder trial. Although Barker was only incarcerated for 10 months and then was released on bond, his trial was postponed many times upon the State's request. The State wanted to convict Barker's codefendant before trying Barker. Barker did not object to any of those continuances. Barker's codefendant was finally convicted (after five trials). The State requested more continuances, and Barker objected. His motion to dismiss the indictment for violation of his speedy trial right was denied, and he was eventually convicted. The Supreme Court affirmed Barker's conviction, devising the four-part balancing test. Barker's constitutional right to a speedy trial had not been violated. The Court concluded that Barker had gambled that his codefendant would be acquitted and had chosen not to pursue his speedy trial right. 407 U.S. at 535-36. We discussed the *Barker* test in *Green*, 260 Kan. at 473-74.

Mathenia was arrested on August 30, 1993, and arraigned on November 12, 1993. His trial commenced on July 25, 1995. He claims that the almost 2-year delay between arrest and trial prejudiced his defense, because some of his witnesses became unavailable and his counsel was unable to locate them at the time of trial. Initially, we consider whether the length of delay, 23 months between arrest and trial, is presumptively prejudicial. *Barker* teaches that the answer to our inquiry "is necessarily dependent upon the peculiar circumstances of the case." 407 U.S. at 530-31. We held in *Green* that a delay of 1 year and 2 days between Green's

arraignment and trial was not clearly presumptively prejudicial. 260 Kan. at 474.

What are the peculiar circumstances here? The crimes for which Mathenia was convicted arose from a group attack by inmates upon two correctional officers in a prison yard recreational shack crowded with other inmates on a rainy afternoon. The evidence had to come from the inmates themselves. Inmate interviews commenced on the evening of the attacks and continued as late as a week before the grand jury proceedings. Physical evidence from the scene was still being processed by the KBI at the time of the grand jury proceedings. During Mathenia's trial, KBI Agent Dennis testified that his department had taken over 600 statements concerning the investigation. At least 30 to 40 of those statements identified participants in the attack. Approximately 30 inmates were considered as viable suspects in the attacks. The investigation resulted in the indictment of 12 inmates in the district court of Leavenworth County. Seven cases went to jury trials (two acquittals and five convictions, including Mathenia's), defendants pleaded in three cases, one case was dismissed without prejudice, and the disposition of one case was not shown in this record. Mathenia's case was one of the last to be tried. To say that this case involved a complex, serious crime would be an understatement.

Based on the circumstances here, we conclude that 23 months between arrest and trial is not "presumptively prejudicial." However, we discuss the remaining three *Barker* factors below.

Mathenia acknowledges responsibility for approximately 7 months of the delay due to the following: (1) He requested a continuance from November 19, 1993, to December 3, 1993; (2) he requested a continuance from December 3, 1993, to December 17, 1993; and (3) he fired his counsel on August 14, 1994, and new counsel had to be appointed (resulting in 182-day delay).

The State argues that the firing of Mathenia's counsel resulted in a 217-day delay (August 12, 1994, to February 17, 1995). Also, Mathenia filed several pretrial motions, which caused delay from December 17, 1993, to March 11, 1994. The State asserts that Mathenia was responsible for a total of 310 days of the delay. Even

under Mathenia's calculations, he was clearly responsible for a substantial portion of the delay.

William Pray was initially appointed as Mathenia's attorney on September 15, 1993. On July 22, 1994, the State requested a continuance of the trial scheduled for July 25, 1994, in that a material witness was not available until after August 16, 1994. Mathenia objected. Mathenia requested new counsel in a letter to the district judge, received August 12, 1994. Pray filed a motion to withdraw on January 31, 1995, stating: "In support of said motion [Pray] states that the defendant has requested different counsel and counsel's employment . . . as Child Support Enforcement Attorney will prevent him from continuing to represent the defendant in this matter." There is no explanation in the record for the lengthy period between Mathenia's letter to the judge requesting new counsel and Pray's motion to withdraw. The district court appointed E. Roger Horsky to represent Mathenia on February 10, 1995. On April 6, 1995, Horsky filed a motion for a bill of particulars, motion to dismiss on statutory speedy trial grounds, motion suppressing photo identification, motion to dismiss the indictment (Mathenia, having been denied a preliminary hearing, argued the grand jury proceeding was improper), and a second request for a bill of particulars. These motions (except the motion to suppress) were heard and denied on April 21, 1995. The motion to suppress the photo identification was heard in part on July 7, 1995, and continued to July 14, 1995, and denied. The reason for the continuance to July 14, 1995, was that certain inmate witnesses Mathenia's counsel wanted to call had not been served with subpoenas. At the July 14, 1995, hearing, there were still problems in getting those witnesses served, but the hearing proceeded, and the district judge ruled on the motion.

Changing Mathenia's counsel at his request caused a significant delay. The last of new defense counsel's several pretrial motions was decided less than 2 weeks before trial. The State's May 1995 continuance request was due to witness unavailability. Mathenia's motion to suppress still had not been heard or decided by then. The record reflects that many returns of service were filed "not served" on several witnesses for both parties, including some who

later testified at Mathenia's trial in July 1995. Efforts to serve subpoenas on witnesses continued until the trial date. It does not appear from the record that the State's conduct caused any unusual or unnecessary delays.

Mathenia first asserted his speedy trial rights on April 6, 1996, over 19 months after his arrest. A substantial portion of the delay was attributable to Mathenia, who remained passive as to his speedy trial rights throughout much of the delay.

As to Mathenia's claim of prejudice because certain witnesses became unavailable at the time of trial, the district judge found that the State had rendered all the assistance requested by Mathenia's counsel in attempting to locate defense witnesses. The judge was not persuaded that the inability to obtain those witnesses was a result of the 2-year lapse in getting the case to trial and denied the motion to dismiss for lack of a speedy trial. We agree.

None of the *Barker* factors support a constitutional speedy trial right violation claim.

### Statutory Right to a Speedy Trial

Mathenia acknowledges that he was not being held in custody solely because of the current charges against him. He does not assert in his brief on appeal that his statutory right under K.S.A. 22-3402 was violated, but relies on his constitutional right to a speedy trial. However, during oral argument, Mathenia's counsel advanced a statutory speedy trial claim relying on *Abel*, 261 Kan. 331, and *Noriega*, 261 Kan. 440. We address that argument, although improperly raised, to clarify how K.S.A. 22-3402 is to be interpreted when defendants, before trial, spend time in jail not solely by reason of the subject criminal charge. Mathenia's pretrial motion to dismiss for violation of constitutional and statutory speedy trial rights alleged that he had been denied his statutory speedy trial right under K.S.A. 22-3402(2), more than 180 days having elapsed from his arraignment date. The district court denied the motion, ruling that "22-3402 doesn't apply in this situation, because Mr. Mathenia is being held in prison on other charges." We agree with the district judge's statutory speedy trial analysis. *Green*, in which a statutory speedy trial violation was asserted and

denied, controls here. 260 Kan. at 473; see *State v. Gross*, 245 Kan. 189, 191, 777 P.2d 781 (1989).

The State in its brief cites *Abel* and *Noriega*, in which we held that K.S.A. 22-3402(2) (requiring that a defendant held to answer on an appearance bond be brought to trial within 180 days) applied to defendants held in jail not solely for the crime charged. The State argues that those cases are distinguishable because they involved defendants who were either held on a parole violation (*Abel*) or a probation violation (*Noriega*) at the time of the crimes, not a defendant committing crimes while incarcerated in the state prison.

Abel and Noriega appealed their convictions for felony murder, aggravated burglary, and aggravated robbery, raising the denial of their statutory right to a speedy trial. At the time of the crimes, Abel was on parole and Noriega was on probation. Both Abel and Noriega moved for dismissal, based on K.S.A. 22-3402(1), because their trials had commenced more than 90 days after arraignment. The district court decided that K.S.A. 22-3402(1) did not apply because Abel and Noriega were being held in jail on other charges—a parole violation for Abel and a probation violation for Noriega. However, the district court ruled that K.S.A. 22-3402(2), which provides a 180-day speedy trial period, would apply. The trials took place within that 180-day period, so there was no statutory speedy trial violation. We affirmed the district court in both cases, relying on *State v. Hill*, 257 Kan. 774, 895 P.2d 1238 (1995) (also involving a defendant who was on parole when charged with felony crimes). *Noriega*, 261 Kan. at 458; *Abel*, 261 Kan. at 335. *Hill* did not rely upon or mention K.S.A. 22-3402(2); however, we acknowledged in *Abel* and *Noriega* that although the 90-day period of K.S.A. 22-3402(1) would not apply, the 180-day period of K.S.A. 22-3402(2) would:

"A person being held in jail not solely for the crime charged is not entitled to be brought to trial within 90 days after the person's arraignment but is entitled to be brought to trial within 180 days after the person's arraignment." *Abel*, 261 Kan. at 335.

"Because Noriega was not solely being held in jail for the crime charged, he was not entitled to be brought to trial within 90 days after his arraignment. He was

entitled to be brought to trial within 180 days after his arraignment." *Noriega*, 261 Kan. at 459.

The quoted language from both cases is inconsistent with prior case law and 22-3402(2) and is disapproved.

In *Hill*, a parole officer placed an arrest and detain order against Hill for failure to comply with conditions of parole after Hill was arrested and jailed for the subject crime. The trial took place more than 180 days after arraignment (arraignment was on October 26, 1992, and trial commenced June 14, 1993). We affirmed the district court's denial of Hill's speedy trial motion, stating:

> "Unless a defendant is being held in jail solely on the charges in the case, the 90-day time limit set forth in K.S.A. 22-3402 does not apply. *State v. Goss*, 245 Kan. 189, Syl. ¶ 1, 777 P.2d 781 (1989). There was substantial competent evidence supporting the district court's determination that K.S.A. 22-3402 was inapplicable because the defendant was not being held in jail solely on the charges herein. We find no error or abuse of discretion in the district court's determination thereof." 257 Kan. at 778.

The K.S.A. 22-3402(2) argument was not raised in *Hill*, even though Hill's trial commenced more than 180 days after arraignment. We addressed the constitutional speedy trial issue. Relying on *Goss*, 245 Kan. 189, we determined that a lapse of less than 11 months between arrest and trial did not require application of the other factors of the *Barker* balancing test. The district court did not abuse its discretion in finding that Hill's constitutional speedy trial rights had not been violated. 257 Kan. at 779.

*Goss* also provides guidance here. Goss was arrested on September 22, 1986, and after an amended complaint was filed and the initial charges were dismissed, arraigned on February 27, 1987, for first-degree murder and unlawful possession of a firearm. His trial commenced on October 14, 1987, resulting in the convictions. While Goss was already in jail, he was served with a criminal warrant for unrelated burglary and theft charges on March 6, 1987. We disposed of the statutory speedy trial issue raised on appeal as follows: "[D]efendant was held in jail solely on the case before us approximately one week between his arraignment and trial. Accordingly, he did not meet the requirement of K.S.A. 22-3402(1) of being 'held in jail solely by reason thereof.'" 245 Kan. at 191.

K.S.A. 22-3402(2) was not discussed, although Goss' trial commenced more than 180 days after arraignment (there were apparently significant delays that the State argued were chargeable to Goss).

In *Green*, 260 Kan. 471, we denied both statutory and constitutional right to speedy trial violation claims. Green was arraigned on November 12, 1993, and his trial commenced on November 14, 1994. We determined that because Green was being held for reasons other than the charges stemming from the May 22, 1993, attack, his right to a speedy trial under K.S.A. 22-3402(1) was not violated. 260 Kan. at 473 (citing *Goss*, 245 Kan. at 191). As in *Hill* and *Goss*, the argument that K.S.A. 22-3402(2) should apply was not raised in *Green* (although well over 180 days had elapsed between arraignment and trial).

Factual distinctions exist between this case and *Green*, on one hand, and *Abel* and *Noriega,* on the other; however, those distinctions do not logically justify what appear to be different interpretations of K.S.A. 22-3402. Under *Green, Goss,* and *Hill,* we interpret K.S.A. 22-3402 as not applicable when a defendant is held in jail for any reason other than the subject criminal charge. Our holdings in *Abel* and *Noriega* could be used to support a much broader interpretation of K.S.A. 22-3402, *i.e.,* if the defendant is in jail solely because of the subject criminal charge, then the 90-day period in K.S.A. 22-3402(1) applies, if the defendant is in jail not solely by reason of the subject criminal charge, then the 180-day period in K.S.A. 22-3402(2) applies. We reaffirm our reasoning in *Green, Hill,* and *Goss,* and disapprove of the interpretation of K.S.A. 22-3402(2) expressed in *Abel,* 261 Kan. at 335, and *Noriega,* 261 Kan. at 459. K.S.A. 22-3402(2) refers only to defendants "charged with a crime and held to answer on an appearance bond." See *State v. Sanders,* 224 Kan. 138, 140, 578 P.2d 702 (1978); *State v. Strong,* 8 Kan. App. 2d 589, 592-93, 663 P.2d 668, *rev. denied* 233 Kan. 1093 (1983). Mathenia was not held on an appearance bond; therefore, K.S.A. 22-3402(2) does not apply.

### The Grand Jury Proceedings

Mathenia contends the grand jury proceedings were not held in

conformity with statutory requirements and, therefore, his indictment is defective. This argument lacked merit in *Green*: "[T]he State . . . demonstrated that [the grand jury] was properly summoned by an order of the majority of district judges for the First Judicial District in accord with K.S.A. 22-3001(1)." 260 Kan. at 475. See *Clemons*, 261 Kan. at 69. *Green* and *Clemons* control.

## Sufficiency of the Evidence

Mathenia contends that his convictions are not supported by the evidence and must be reversed. He points out that there was no physical evidence linking him to the crime. He acknowledges the conflicting testimony of the State's witnesses, as opposed to those who testified for him, and agrees, at least in part, that "[t]his case hinged on the credibility of the witnesses."

Three of the State's witnesses provided eyewitness testimony of Mathenia's involvement in the attacks on both officers.

We have considered and rejected sufficiency of evidence claims in four other cases concerning the Lansing incident: *Clemons*, 261 Kan. 66; *Green*, 260 Kan. 471; *Knighten*, 260 Kan. 47; and *Harris*, 259 Kan. 689. The convictions were affirmed in each case. This case is no different. For a recitation of our often repeated standard of review in sufficiency of the evidence claims, see *Clemons*, 261 Kan. 66, Syl. ¶¶ 3-4.

## Gang Membership or Affiliation

Mathenia asserts that the district court erred in allowing evidence of gang membership or affiliation to be presented.

Abuse of discretion is the standard applied when reviewing the admission of gang evidence. *State v. Cox*, 258 Kan. 557, 562, 908 P.2d 603 (1995). Mathenia acknowledges that the State offered gang evidence to impeach him and his alibi witnesses.

Mathenia's counsel argued that it was improper for the State to inquire into gang association when the State gave no pretrial notice that it intended to explore this area and claim that this attack on the officers was gang-related. The State asserts that its sole intent was to use the evidence of gang involvement for impeachment purposes, showing that Mathenia's alibi witness and Mathenia were

all associated with the same gang, so it was not necessary to provide pretrial notice. The district court ruled against Mathenia, agreeing that "coincidental gang membership between those witnesses and the defendant is a proper subject for impeachment." We agree.

The gang evidence presented was relevant to witness bias and credibility, and as in *Green*, 260 Kan. at 474-75, and *Knighten*, 260 Kan. at 53-55, the district court did not abuse its discretion in admitting this evidence.

Affirmed.