IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,052

STATE OF KANSAS,
*Appellee*,

v.

BRUCE JULIUS ASHLEY, JR.,
*Appellant.*

SYLLABUS BY THE COURT

1.

The purpose of a cautionary instruction on informant testimony is to make the jury aware of possible bias on the part of the informant witness.

2.

A requested jury instruction must be supported by sufficient evidence, viewed in the light most favorable to the party requesting the instruction.

3.

While there can be no guarantee of witness candor and credibility, the principal means of attacking shaky but admissible evidence are vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.

4.

In order to establish the right to a new trial based upon newly discovered evidence, a criminal defendant must establish: (1) that the newly proffered evidence could not have been produced at trial with reasonable diligence; and (2) that the newly discovered

1

evidence is of such materiality that it would be likely to produce a different result upon retrial.

5.

In determining whether new evidence is material, the trial judge must assess the credibility of the newly proffered evidence, and the appellate court will not reassess the district judge's determination of credibility from such a hearing.

6.

When evidence is properly presented and meets the requirements of K.S.A. 60-455—the fact to be proved is material; the material fact is disputed; the evidence is relevant to prove the disputed material fact; and the evidence's probative value outweighs its potential undue prejudice—then the trial court must give a limiting instruction informing the jury of the purpose for admitting the evidence.

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed June 23, 2017. Affirmed.

*Sarah Ellen Johnson*, of Capital Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jacob M. Gontesky*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Bruce J. Ashley, Jr., appeals from his conviction of one count of first-degree felony murder and one count of attempted aggravated robbery. Finding no error in the proceedings below, we affirm.

2

On the night of May 12, 2010, Gerry Grovenburg was found dead behind the counter of Mr. G's, the liquor store that he owned, the victim of a single gunshot wound to his chest. Based on sales transactions and the arrival of a customer at the store, investigators placed the time of death between 9:58 p.m. and 10:20 p.m. A .40 caliber Smith & Wesson cartridge case was recovered from the scene. Two dogs were used independently in an attempt to find a scent trail of anyone who had recently left the store. One dog led his handler north from the store to a parking lot where the trail ended.

Almost a month later, on June 4, 2010, Kansas City, Missouri, police responded to a shooting at 40th and Highland. Investigators recovered blood samples and numerous shell casings up and down the street of Highland. They noticed three houses with bullet holes and bullet impacts. Defendant Bruce Ashley's DNA was later identified in blood stains on the road, on a shell casing from a 9mm Luger, and on a .40 caliber Smith & Wesson shell casing found at the scene.

On the same day, a police detective with the Kansas City, Kansas, Police Department responded to a report from a local hospital regarding the arrival of a walk-in shooting victim. In the parking lot, the detective found a gray Kia, which was later determined to belong to Tiffany Bell, Ashley's girlfriend at the time. The passenger seat was stained with blood, and a shell casing was found between the passenger seat and the passenger door. DNA testing later showed Ashley was the source of the blood in the car.

Officers identified the shooting victim at the hospital as Ashley, who had suffered multiple gunshot wounds. Ashley informed them that he was shot by some unknown men while he was watching a basketball game on Second Street in Kansas City, Kansas,

3

nowhere near 40th and Highland. In a subsequent interview several days later, Ashley again told police that he had been watching a basketball game when he was shot.

While hospitalized, however, Ashley told an attending nurse practitioner that the shooting occurred when he was out driving and drinking with friends. The nurse reported that he told her that at some point he got involved in a road rage accident and at that time both parties in the altercation got out of their vehicles and got into a fight, during the course of which he was shot. He said nothing to her about a basketball game.

A firearms examiner for the Johnson County Crime Lab examined the casing recovered from the liquor store and determined that it was fired from a Glock-style firearm. He further examined shell casings found at 40th and Highland and determined that three different guns were fired there: two Lugers and a Glock-type firearm that fired all of the .40 caliber Smith & Wesson shell casings that were examined.

In September 2010, Ashley voluntarily agreed to a recorded interview with the police. During the interview, he denied having any current relationship with his cousin, Larry Marshall. He also stated that he had not carried a gun since 2008. Although Ashley acknowledged that he had been in the liquor store many times, he said he was not there at the time of the murder. He allowed police to obtain a swab to carry out DNA testing. As they were leaving the interview area, an officer asked Ashley if it was possible that he had shot just one round from a .40 caliber handgun while he was inside the vehicle at the 40th and Highland scene. Ashley responded that it was "possible."

Ashley's claim that he had not possessed a gun since 2008 was disputed by evidence that was later developed. On March 4, 2010, Officer Billy Wyrick was conducting parking lot surveillance at the Jefferson Place Apartments in Olathe, when he wrote a note about seeing the handle of a Glock handgun inside Ashley's Trailblazer. Bell

4

eventually testified that she began dating Ashley around June of 2009 and saw him with a gun "maybe once or twice."

In February 2011, officers executed a search warrant on a storage locker rented by Ashley in Mission, Kansas. The warrant was based on a vehicle search that led the officers to suspect that Ashley might be connected to the gun used in the liquor store murder. In the locker, they found a .40 caliber Smith & Wesson cartridge. The cartridge matched the manufacturing characteristics and marks on the shell casing found in the liquor store.

On May 31, 2013, Ashley was booked on murder charges. Tyler Roberts was booked at about the same time on drug and probation-violation charges. Roberts testified at Ashley's trial that he and Ashley began a conversation while they were in the booking area, an assertion confirmed by video-recordings of the booking area. Roberts testified that Ashley initially said he was booked on murder and boasted about how high his bond was. He then made a comment that "he knew he was gonna be screwed because he killed a white man in Johnson County." Ashley told Roberts that, when he was arrested, he had about $10,000 in checks on his person, a detail that was confirmed by the jail intake property inventory.

Ashley's cousin, Larry Marshall, was also charged with murder. Marshall agreed to plead guilty to conspiracy to commit armed robbery and to aiding a felon in exchange for 60 months in prison and the removal of the murder charge. Marshall told police that he and Ashley approached the liquor store a month or so before the murder with the intent to "hit a lick," *i.e.*, to rob a liquor store. Marshall was supposed to serve as a lookout, but, when they arrived at the store, Marshall decided that he did not want to be part of the undertaking, so he said somebody was watching, and the two men left.

Marshall testified at Ashley's trial. He repeated the statements that he earlier gave the police. He explained that, on the night of the murder, he and Ashley were both armed, with Ashley carrying his Glock .40 caliber gun. Marshall drove Ashley to 75th and Nieman, where Ashley got out of the car. Ashley instructed Marshall to stay in the area and wait for a phone call to let him know when Ashley was ready to be picked up. Not long afterward, Marshall received a call from Ashley, telling him to pick him up at the apartment complex where he used to live. After Ashley got back into the car, he told Marshall, "I think I shot somebody."

An analysis of cell phone use revealed that a call was placed to Larry Marshall at 10:08 p.m. that was relayed from a tower near the liquor store and that served the area around the liquor store, which tended to corroborate Marshall's depiction of the events. The results of the canine search after the murder were consistent with the perpetrator leaving the liquor store and going by foot to the place where Marshall said he picked Ashley up.

On May 13, 2013, the State filed a complaint charging Ashley with one count of first-degree felony murder and one count of attempted aggravated robbery. A jury convicted Ashley of first-degree felony murder and attempted aggravated robbery. He was sentenced to a term of life imprisonment without the possibility of parole for 20 years for murder and a consecutive term of 43 months for the attempted robbery.

ANALYSIS

*The Requested Informant Reliability Jury Instruction*

Seeking to downplay the testimony of Roberts, Ashley requested a jury instruction urging the jury to exercise caution when evaluating the reliability of a prison informant.

6

The trial court denied the request, relying on this court's decision in *State v. Lowe*, 276 Kan. 957, 80 P.3d 1156 (2003). Ashley now asks this court to reconsider *Lowe* and hold that a specific cautionary instruction is appropriate when a prison informant who was not acting as an agent for the State at the time that he or she learned incriminating information testifies at trial.

When reviewing challenges to jury instructions, the appellate court first considers the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review. It next uses an unlimited review to determine whether the instruction was legally appropriate. It then determines whether there was sufficient evidence, viewed in the light most favorable to the requesting party, that would have supported the instruction. Finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

Ashley requested the following instruction, which is now PIK Crim. 4th 51.100:

> "You should consider with caution the testimony of an informant who, in exchange for benefits from the State, acts as an agent for the State in obtaining evidence against a defendant, if that testimony is not supported by other evidence."

The trial court rejected the request, finding that Roberts was not acting as an informant for the State when he obtained the information about which he testified. Ashley contends on appeal that the exclusion of the requested instruction constitutes reversible error.

We initially note that Ashley asks this court to go much further than simply requiring a cautionary instruction. He points to evidence that informants are inherently unreliable and urges this court to limit the use of testimony of prison informants. These matters were not brought up to the trial court, however, and are therefore not preserved on appeal. See, *e.g.*, *State v. Page*, 303 Kan. 548, 558, 363 P.3d 391 (2015) (party may not object at trial to admission of evidence on one ground and then on appeal argue different ground); *State v. Sprague*, 303 Kan. 418, 432-33, 362 P.3d 828 (2015) (failure to make specific and timely objection at trial to admission of evidence precludes appellate review); *State v. Raskie*, 293 Kan. 906, 914, 269 P.3d 1268 (2012) (contemporaneous objection must be made to all evidentiary claims—including questions posed by prosecutor—to preserve issue for appellate review).

In the absence of any objection below to the use of informant testimony, the sole issue for determination is whether the trial court erred in refusing to give the requested instruction. Ashley asks this court to backtrack and overrule a long line of cases that hold that a cautionary instruction is appropriate only when prisoner-witnesses are acting as agents of the State when they obtain the information about which they later testify. See, *e.g.*, *State v. Abel*, 261 Kan. 331, 336, 932 P.2d 952 (1997) (cautionary instruction regarding informant testimony not required when witnesses not acting as "agent[s] for the State" when they obtained evidence eventually used against defendant), *overruled on other grounds by State v. Mathenia*, 262 Kan. 890, 900, 942 P.2d 624 (1997); *State v. Kuykendall*, 264 Kan. 647, 957 P.2d 1112 (1998) (reaffirmed holding in *Abel*); *State v. Barksdale*, 266 Kan. 498, 973 P.2d 165 (1999) (appellant invited court to reconsider its earlier decisions, including *Kuykendall;* court elected to retain instruction); *State v. Brown*, 272 Kan. 809, 815-16, 37 P.3d 31 (2001) (held witness was not informant within meaning of pattern jury instruction); *Lowe*, 276 Kan. at 964 (held witness was not an informant because was not acting as agent for State when he gained information about defendant; added: "Moreover, even if he had been, the jury heard [the witness] state—on

8

both direct and cross-examination—that he was testifying in hopes of avoiding a life sentence on a firearm charge. Thus, the jury was aware of his possible bias.").

In this line of cases, this court has consistently held that the informant cautionary instruction is not required when the information was passed to the witness at a time when the witness was not serving as an agent of the State—that is to say, the witness had not been contacted by the State and was not intentionally given the role of investigator.

Ashley requested an instruction implicitly informing the jury that Roberts was acting as an agent for the State when he heard Ashley make incriminating statements. The record simply does not support such an instruction:  nothing in the record indicates that Roberts was in any way an "agent" for the State when he was in the holding area with Ashley. He had not discussed Ashley's case with State authorities, and he was not placed in the holding area for the purpose of obtaining information from Ashley.

Because the requested instruction was not supported by evidence, even viewed in the light most favorable to Ashley, it was not appropriate in this case. Ashley did not suggest a modified instruction that would have matched the evidence offered at trial.

The United States Supreme Court has noted that "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

These protections were afforded in the present case. During voir dire, both parties mentioned to potential jurors that caution is necessary when someone with a criminal history testifies. In opening argument, Ashley again cautioned the jury that a witness with

a criminal history may be less reliable because of incentives to cooperate with the prosecution. The jury was informed of Roberts' prior convictions on drug charges, burglary, and felony theft. The jury was informed that Roberts might receive the benefit of waived or reduced prosecution if he testified on the State's behalf. Ashley devoted considerable time on cross-examination to emphasizing Roberts' criminal past and history of incarceration and challenging Roberts' motives for providing the testimony. Finally, the jury was instructed on the burden of proof and its duty to evaluate the credibility of witnesses.

There is no panacea for dishonesty by any witness, not only prisoner informants. The jury in the present case was correctly instructed in the established law, and the safeguards of court warnings and thorough cross-examination were in play. Roberts' testimony was not essential or the most compelling evidence of Ashley's guilt; rather, it tended to corroborate the ballistics evidence, the telephone call evidence, and the testimony of Ashley's accomplice, which was also corroborated by the telephone and dog search evidence.

Ashley argues that the evidence in the case was largely circumstantial, only connecting him to the weapon used and the location of the crime. He downplays the significance of his accomplice's testimony and of his own untruthful statements to police about his whereabouts, his relationship with his accomplice, his ownership of a gun—a gun of the same style that was used in the murder—and his participation in the later shootout.

We conclude that the circumstances of the present case did not support the instruction that Ashley requested.

*The Motion for New Trial*

After the jury announced its verdict but prior to sentencing, Ashley filed a motion for new trial. He contended that two inmates who were incarcerated with Larry Marshall—Ashley's accomplice—had heard Marshall tell them things that undermined Marshall's trial testimony. After an evidentiary hearing, the district court denied the motion. Ashley argues that the denial was reversible error.

An order denying a request for a new trial based on newly discovered evidence is reviewed for abuse of discretion. "Judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact." The party asserting the error "bears the burden of demonstrating an abuse of discretion." *State v. Warren*, 302 Kan. 601, 614, 356 P.3d 396 (2015).

In order to establish the right to a new trial based upon newly discovered evidence, a criminal defendant must establish:  (1) that the newly proffered evidence could not have been produced at trial with reasonable diligence; and (2) that the newly discovered evidence is of such materiality that it would be likely to produce a different result upon retrial. *Warren*, 302 Kan. at 615. In determining whether new evidence is material, the trial judge must assess the credibility of the newly proffered evidence, and the appellate court will not reassess the district judge's determination of credibility from such a hearing. 302 Kan. at 615-16.

This court has held that newly discovered evidence that merely tends to impeach or discredit the testimony of a witness is ordinarily not grounds for granting a new trial. *State v. Richard*, 235 Kan. 355, 363, 681 P.2d 612 (1984); *State v. Foy*, 224 Kan. 558, 569, 582 P.2d 281 (1978). When deciding whether newly proffered evidence is material

so as to warrant a new trial, the trial court must assess the credibility of the newly proffered evidence. Even when the evidence tends to impeach the testimony of a witness, the presence or absence of corroborating evidence is an additional factor to consider in determining whether newly discovered evidence is so material that it is likely to produce a different result upon retrial. *State v. Rojas-Marceleno*, 295 Kan. 525, 540, 285 P.3d 361 (2012).

In light of the general rule that newly discovered evidence may not be used solely for impeachment purposes, there would have to be some other compelling reason to grant the motion for new trial. The trial court heard the testimony of the two prisoners who proffered testimony adverse to Marshall's trial testimony.

Brian Martin served time with Marshall in Arkansas. Marshall allegedly told Martin that it was he, not Ashley, who shot Grovenburg: Marshall shoved the store attendant with a gun in his chest, and the shooting was an accident. Marshall said he was not worried about his trial because he was going to lay the blame on "somebody else." Martin encountered Ashley while the jury was deliberating and told him, "I wish you could have got to talk to me before now because I have some information that could– I could have given your attorney."

Jose Ramirez-Parilla served time with Larry Marshall in Johnson County. Marshall allegedly told Ramirez-Parilla that he lent Ashley a cell phone that Ashley later returned to him. This testimony would have addressed the telephone call records and would have suggested that it was not Ashley who called Marshall requesting a ride after the murder, but perhaps it was Marshall who called Ashley requesting a ride. Ramirez-Parilla also claimed to have overheard Marshall say that the killing was Marshall's fault but that the State would only seek a 5-year sentence if he testified against Ashley.

12

The State presented witnesses to undermine the credibility of the two defense witnesses: a detective for the Johnson County Sheriff's Office who maintained jail housing records, the notary public who notarized Martin's and Ramirez-Parilla's affidavits, and Larry Marshall. Records showed that Ashley's two witnesses prepared their affidavits while they were housed with Ashley, meaning that they had ample opportunity to speak with him before they came forward with affidavits and the versions of conversations that they presented at the hearing. The notary public testified that Ashley sought her services and paid the notary fee and may have helped the inmates prepare the affidavits, which was the first time in her years of experience that one inmate had provided another inmate's affidavit. Detective John Stirling also testified about discrepancies between Martin's description of Marshall's "confession" and the forensic evidence from the crime, particularly, the distance from which the gun had been fired at the victim.

Having heard the testimony and read the affidavits, the trial court denied the motion for new trial. Although the court agreed that the evidence was not available or obtainable before the trial, it doubted the credibility of the two inmates, finding that a jury considering similar evidence "would discount it tremendously" because of the other evidence before it and concluding that "[t]his evidence does not rise to the level that it would change the reasonable probability of the outcome of the jury's verdict in this case."

As noted earlier, a trial court's determination of credibility and materiality is not subject to reassessment on appeal. Here, the trial court conducted an extensive hearing and made findings that were consistent with the evidence presented.

We therefore conclude that the trial court did not act in an arbitrary, fanciful, or unreasonable way. There was no showing that Ashley was deprived of a fair trial by the exclusion of the evidence that putatively impeached the testimony of his accomplice. The

13

trial court made determinations of credibility that we will not reweigh, and it did not abuse its discretion in denying the motion.

*The K.S.A. 60-455 Limiting Instruction*

The trial court granted the State's motion to introduce certain evidence under K.S.A. 60-455. Ashley objected to a limiting instruction on the use of prior crimes evidence, and the trial court, after hearing the argument of both parties, elected to overrule the objection. Ashley argues on appeal that the instruction was overbroad and that it improperly and prejudicially suggested to the jury that certain noncriminal conduct was actually criminal.

Because Ashley objected to the instruction, the standard of review is the same as in the first issue above—evaluating the reviewability of the issue, the legal propriety of the instruction, the evidence supporting the instruction, and whether any error was harmless. *Fisher*, 304 Kan. at 256-57.

The trial court gave the following limiting instruction on K.S.A. 60-455 evidence, as requested by the State:

> "Instruction No. 11: Evidence has been admitted tending to prove that the defendant committed crimes other than the present crimes charged. This evidence may be considered solely for the purpose of proving the defendant's plan, preparation, opportunity, or identity."

Ashley contends, without offering any authority in support, that, when a defendant objects to a cautionary instruction, it is per se error to give the instruction. A search of Kansas caselaw fails to uncover such a rule. To the contrary, this court has held that, if

14

the presented evidence meets all of the K.S.A. 60-455 requirements—the fact to be proved is material; the material fact is disputed; the evidence is relevant to prove the disputed material fact; and the evidence's probative value outweighs its potential undue prejudice—then the trial court "must" give a limiting instruction informing the jury of the purpose for admitting the evidence. *State v. Richmond*, 289 Kan. 419, 436, 212 P.3d 165 (2009); see also *State v. Barber*, 302 Kan. 367, 376, 353 P.3d 1108 (2015) (if prior crimes evidence is properly admitted, limiting instruction is "required").

Ashley argues that the instruction did not specify which evidence was subject to the limitation and that the jury might infer that various actions on his part, such as owning a gun, were criminal in nature. He claims that he was connected to the later shooting at 40th and Highland but that the shooting was not an example of criminal conduct on his part because he was the victim. This is incorrect:  although he was a victim in that shooting, the forensic evidence and testimony of the nurse strongly suggested that Ashley fired his Glock many times from a stretch of road in a residential area, putting bullets in several houses.

It is for this reason that the limiting instruction was appropriate:  it informed the jury that it should not convict Ashley because he was recklessly shooting a gun inside city limits, presumably trying to injure or kill other people, and it should not convict Ashley because he had a propensity to engage in firearm-related violence; the jury was permitted to use the evidence only to make the identifying links between the ammunition and weapons used in that shooting, in which Ashley was an active participant, and in the shooting at the liquor store.

Similarly, Marshall testified that he and Ashley conspired to rob the liquor store about a month before the murder. The instruction properly directed the jury not to consider that evidence for the purpose of convicting Ashley of an uncharged crime or for

15

having a propensity to rob liquor stores; the testimony could, however, be used to show planning and preparation.

In *Barber*, the defendant raised a related challenge. He argued that the K.S.A. 60-455 limiting instruction was erroneous because it was not sufficiently limiting. 302 Kan. at 377. This court disagreed, holding that the "instruction told the jury it could consider the evidence only for specified purposes . . . ." 302 Kan. at 378. Such was the case here. Although Ashley properly preserved his objection, the instruction was legally correct and was supported by the evidence. Ashley objected to a required instruction, and he did not offer an alternative instruction that would have limited or more narrowly defined for the jury which crimes were contemplated by the K.S.A. 60-455 evidence. In the absence of a requested instruction that might have satisfied the requirement for a limiting instruction, we cannot conclude that the trial court erred in administering the instruction.

CONCLUSION

Finding no error in the proceedings below, we affirm the convictions.

16