IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,441

STATE OF KANSAS,
*Appellee*,

v.

KEN'DUM DAN'SHA OWENS,
*Appellant*.

SYLLABUS BY THE COURT

1.

When a criminal defendant asserts a violation of his or her right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights, Kansas courts weigh four nonexclusive factors: the length of delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant. The court balances the factors, weighing the conduct of both prosecution and accused. Because the test requires a balancing, none of these factors is a necessary or sufficient condition for finding a violation.

2.

The right to a speedy trial guaranteed under the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights applies in juvenile offender proceedings under the Revised Kansas Juvenile Justice Code, K.S.A. 2018 Supp. 38-2301 et seq.

1

3.

The length-of-delay factor is a triggering mechanism in a speedy trial analysis. Until there is some delay that is presumptively prejudicial, there is no necessity for inquiry into the other factors applied in a speedy trial analysis.

4.

Even if a defendant pushes for delay in order to gain some advantage, the delay itself can be excessive and presumptively prejudicial. Complexity is generally the determinative factor separating a delay that is presumptively prejudicial from one that is not.

5.

Under the facts of this case, the defendant failed to establish a violation of the constitutional right to a speedy trial.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 15, 2017. Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Opinion filed November 1, 2019. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Ken'Dum Dan'Sha Owens appeals a district court order rejecting his argument that a 19-month delay between his arrest and trial violated his constitutional right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. In part, Owens argues a Court of Appeals panel erred in holding that the six months Owens spent in juvenile detention should not be counted in determining the length of the delay. See *State v. Owens*, No. 115,441, 2017 WL 4082317, at *4 (Kan. App. 2017) (unpublished opinion). He also argues the panel erred in weighing the factors used by courts when analyzing a constitutional speedy trial claim.

We agree Owens' six-month period of juvenile detention should be included in a calculation of how long it took to get to trial. But Owens has not established a violation of his constitutional right to a speedy trial, even considering the full 19-month delay rather than the 13 months considered by the panel. We affirm the district court and the Court of Appeals. See *Owens*, 2017 WL 4082317, at *1

FACTS AND PROCEDURAL BACKGROUND

In the late evening hours of February 16, 2012, two men approached Nathan Davis after he exited his vehicle in the parking lot of his apartment complex. One of the men— later identified as Owens—pointed a gun at Davis and demanded his car keys. Davis handed over his keys, and the two men got into Davis' vehicle and drove away. Davis immediately called 911 and told a dispatcher his car had been stolen at gunpoint. He described the man holding the gun as a black male, 20 to 22 years old, about 6 feet tall with a stocky build, and wearing a black hooded sweatshirt, red or black ball cap, and blue jeans.

3

A nearby law enforcement officer, Brent Johnson, heard the information relayed by dispatch and saw a vehicle matching the description of Davis' car stopped in the middle of the street a few blocks from Davis' apartment. Officer Johnson activated his patrol car's sirens and emergency lights. The man seated in the driver's seat of Davis' vehicle exited and ran away. Officer Johnson chased the man on foot through the surrounding residential area but lost sight of him a few minutes into the pursuit. Officer Johnson described the suspect as a black male wearing blue jeans, white tennis shoes, a red baseball cap, and a black jacket.

Officer Johnson maintained a perimeter around the area where he believed the suspect was likely hiding while waiting for backup officers to arrive. A K-9 officer soon arrived and began searching the area with his police dog. The officers found a black male—later identified as Owens—wearing a black hooded sweatshirt, white tennis shoes, and brightly colored pajama pants hiding behind a tree in the back yard of a nearby residence. The officers arrested Owens and discovered a red and black baseball cap in the same yard. The officers also located a silver handgun in the yard of another nearby residence. But they did not find any blue jeans.

The officers brought Davis to the location where they held Owens. Davis identified Owens as the man who pointed the gun at him and stole his car. Officers found a cell phone in Davis' car, and they later identified it as belonging to Owens.

The State originally alleged Owens committed juvenile offenses; he was 17 at the time. After about six months, the State dismissed the juvenile case and filed a criminal information, charging Owens with aggravated robbery, criminal use of a weapon, and criminal deprivation of property. After the defense made 10 requests for continuance, Owens filed a pro se motion for new counsel. In part, he complained his attorney had

4

been seeking continuances without his consent and without ensuring that Owens was present at continuance hearings. But Owens withdrew his request for new counsel when told his case would be given a "hard jury trial setting." The trial began just more than 19 months after Owens' arrest.

At trial, Officer Johnson identified Owens as the man he chased and officers later arrested. Officer Johnson testified Owens was wearing blue jeans when he began chasing him but was wearing brightly colored pajama pants when he was apprehended. A post-arrest photo of Owens was admitted into evidence showing the pajama pants and other clothing he was wearing at the time of his arrest. Davis identified the man in the photograph as the person who stole his car at gunpoint but noted the difference in pants. Davis also identified the gun the officers discovered as the one Owens had used. Owens took the stand and claimed his phone had been stolen while he was playing basketball near where he was arrested. He denied being involved in the aggravated robbery of Davis.

The jury convicted Owens as charged. He appealed his convictions and sentence, raising five issues. The Court of Appeals affirmed, finding no reversible error. See *Owens*, 2017 WL 4082317, at *1.

Owens timely petitioned for our review. We granted review only as to Owens' claim that the delay between his arrest and trial violated his constitutional right to a speedy trial. The State filed a conditional cross-petition for review, arguing in part that the panel erred in one aspect of its speedy trial analysis—specifically, in finding the length of the delay presumptively prejudicial. We granted only that portion of the State's request for review.

This court's jurisdiction is proper. See K.S.A. 20-3018(b) (petition for review of Court of Appeals decision); see also Supreme Court Rule 8.03(b) and (c) (2019 Kan. S. Ct. R. 53) (petition for review and cross-petition for review from Court of Appeals opinion).

CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

*Standard of Review*

The factual findings underpinning a district court's decision regarding a defendant's constitutional speedy trial right are reviewed for substantial competent evidence, but the ultimate legal conclusion drawn from those facts is reviewed de novo. *In re Care & Treatment of Ellison*, 305 Kan. 519, 533-34, 385 P.3d 15 (2016).

*Analysis*

Owens argues his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights was violated because his jury trial did not occur until more than 19 months after his arrest. The Sixth Amendment provides:  "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." This provision applies in state court through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Klopfer v. North Carolina*, 386 U.S. 213, 222-23, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967). Owens also cites § 10 of the Kansas Constitution Bill of Rights, which guarantees the right of an accused "[i]n all prosecutions" to "a speedy public trial by an impartial jury."

6

The United States Supreme Court has identified four nonexclusive factors to be analyzed when a criminal defendant makes a Sixth Amendment speedy trial claim. Those factors, set out in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." This court applied these factors in *State v. Otero*, 210 Kan. 530, 532-36, 502 P.2d 763 (1972). In doing so, the *Otero* court noted that "the approach to the problem is a balancing test in which the conduct of both prosecution and accused is to be weighed. This approach suggests an *ad hoc* basis in which various factors are to be taken into account." 210 Kan. at 532. Because the test requires a balancing, none of these factors is a necessary or sufficient condition for finding a violation. Instead, we consider them together along with any other relevant circumstances. See *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564-65, 103 S. Ct. 2005, 76 L. Ed. 2d 143 (1983); *State v. Fink*, 217 Kan. 671, 673, 538 P.2d 1390 (1975).

We will examine each of the four *Barker* factors in turn.

1. *Length of the delay*

As to the first factor—length of the delay—the Court of Appeals panel held (1) Owens' constitutional right to a speedy trial attached upon the filing of adult criminal charges and (2) the 13-month delay from that point until Owens' trial was presumptively prejudicial. *Owens*, 2017 WL 4082317, at *4. Owens agrees the delay was presumptively prejudicial, but he argues the delay was 19, not 13, months. He contends his right to a speedy trial attached when he was arrested and thus before adult criminal charges were brought.

7

In briefing, the State argued the delay was only 13 months. It softened its view at oral argument in light of *State v. Robinson*, 56 Kan. App. 2d 567, 434 P.3d 232 (2018). *Robinson*, filed after the parties had submitted their brief to this court, held a juvenile offender has the same constitutional right to a speedy trial as an adult criminal defendant. 56 Kan. App. 2d at 571. The State also argued that, regardless of whether the delay is 13 or 19 months, the panel went astray in concluding either length of time is presumptively prejudicial. The State further contends the delay here was not presumptively prejudicial because the delay was mainly caused by Owens. And, it argues, this point alone requires us to reject Owens' speedy trial claim.

We first address when Owens' speedy trial right attached. The Court of Appeals, in deciding not to include the six-month period during which Owens was held in juvenile detention, stated that there "seems to be no Kansas caselaw exactly on point." *Owens*, 2017 WL 4082317, at *4. The panel then cited an Arizona decision, *State v. Myers*, 116 Ariz. 453, 569 P.2d 1351 (1977). In *Myers*, as here, the defendant first faced charges as a juvenile offender and then later as an adult. The Arizona court held the speedy trial right did not attach until the adult criminal prosecution began. 116 Ariz. at 454-55. *Myers* dovetails with the decision of this court in *State v. Breedlove*, 295 Kan. 481, 487, 286 P.3d 1123 (2012), which is not cited by the panel or the parties. In *Breedlove*, this court held: "A juvenile has neither a constitutional nor a statutory right to a right to a speedy trial in matters conducted under the Juvenile Justice Code." 295 Kan. at 487.

Owens, however, argues that this court's decision in *In re L.M.*, 286 Kan. 460, 186 P.3d 164 (2008), suggests juvenile offenders have a constitutional speedy trial right. For support of this position, he filed a letter of additional authority under Supreme Court Rule 6.09(b) (2019 Kan. S. Ct. R. 39) and cited *Robinson*, 56 Kan. App. 2d at 571, for its holding that the constitutional right extended to juveniles.

8

The *Robinson* panel mainly relied on *In re L.M.*, 286 Kan. 460, in which this court considered whether the Sixth Amendment and § 10 granted Kansas juvenile offenders the right to a jury trial. *In re L.M.* recognized that *Findlay v. State*, 235 Kan. 462, 463-64, 681 P.2d 20 (1984), held juveniles charged under the Kansas Juvenile Justice Code (KJJC) have no constitutional right to a trial by jury. But almost 20 years after *Findlay*, the Kansas Legislature repealed the KJJC and replaced it with the Revised Kansas Juvenile Justice Code. See K.S.A. 2018 Supp. 38-2301 et seq.

The *In re L.M.* court noted the significant differences between the KJJC and the revised code and concluded: "Changes to the Kansas Juvenile Justice Code since 1984 have eroded the benevolent, child-cognizant, rehabilitative, and parens patriae character that distinguished it from the adult criminal system." 286 Kan. 460, Syl. ¶ 1. Provisions in the revised code make juvenile offender proceedings "more akin to an adult criminal prosecution." 286 Kan. 460, Syl. ¶ 1. This change led the court to abrogate *Findlay* and to hold "that juveniles henceforth have a constitutional right to a jury trial under the Sixth and Fourteenth Amendments." 286 Kan. 460, Syl. ¶ 1. Addressing § 10 of the Kansas Constitution Bill of Rights, *In re L.M.* held: "The proceedings under the KJJC fit within the meaning of the phrase 'all prosecutions' as set forth in § 10 of the Kansas Constitution Bill of Rights, and juveniles have a right to a jury trial under the Kansas Constitution." 286 Kan. 460, Syl. ¶ 2. The *Robinson* court held the same reasoning applied to the right to a speedy trial guaranteed by the Sixth Amendment and § 10. 56 Kan. App. 2d at 571. *Robinson* reasoned that this court's comments in *Breedlove* addressing the Kansas Juvenile Justice Code should not be read to apply to matters conducted under the *Revised* Kansas Juvenile Justice Code; instead, the analysis in *In re L.M.* applied. 56 Kan. App. 2d at 571.

While the State initially took a position contrary to the *Robinson* holding, at oral argument before us, it recognized the *Robinson* holding and dropped its opposition to the

application of a constitutional speedy trial right in juvenile offender proceedings. Thus, it offers no reason to reject the *Robinson* panel's reasoning or to distinguish *In re L.M.*'s analysis of the effect of the Revised Kansas Juvenile Justice Code on the constitutional right to a jury trial from an analysis of the revised code's impact on the constitutional right to a speedy trial. Nor do we discern any reason to distinguish the application of the two rights granted by the Sixth Amendment and § 10.

We, therefore, hold the right to a speedy trial guaranteed under the Sixth Amendment and § 10 applies in juvenile offender proceedings under the Revised Kansas Juvenile Justice Code. See *Robinson*, 56 Kan. App. 2d at 571. As a result, because the charges against Owens remained the same throughout both the juvenile offender and adult criminal proceedings, his right to a speedy trial attached on his arrest. See *State v. Rivera*, 277 Kan. 109, 112, 83 P.3d 169 (2004) (holding speedy trial right attaches when prosecution begins by arrest). This means the delay in bringing Owens to trial was more than 19 months.

Recognizing the possibility that the entire 19-month period should be considered, the Court of Appeals concluded the delay was presumptively prejudicial no matter if the delay was 19 months or 13 months. See *Owens*, 2017 WL 4082317, at *4. The State disagreed with this conclusion in its cross-petition for review. The significance of such a potential error arises because the United States Supreme Court has explained the delay factor is "to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. And generally a delay of more than 19 months is more likely to be prejudicial than a delay of 13 months.

Even so, this court has held that delays of 13 and 23 months in starting trials for murder were not presumptively prejudicial. See *State v. Hayden*, 281 Kan. 112, 128, 130

P.3d 24 (2006) (13-month delay); *State v. Mathenia*, 262 Kan. 890, 895, 942 P.2d 624 (1997) (23-month delay). But we have rejected the "inflexible" approach of determining presumptive prejudice based on predesignated permissible lengths of time. See *State v. Weaver*, 276 Kan. 504, 510, 78 P.3d 397 (2003); see also *Hayden*, 281 Kan. at 128 ("We have resisted using our previous cases to set a specific time limit."). Instead, the "inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 530-31.

Here, unlike the complex murder proceedings that led to the 13- and 23-month delays at issue in *Hayden* and *Mathenia*, Owens was charged with classic "street crimes" of aggravated robbery, criminal use of a weapon, and criminal deprivation of property. And there were few witnesses and no complex forensic or other evidence. The difference in complexity makes this case more like *Weaver*. There, this court determined a 14-month delay was presumptively prejudicial. The court reasoned that the "crime was one count of possession of cocaine with intent to sell. The State's case against him was simple and straightforward—police found on Weaver crack cocaine packaged in individual units and $265 cash, including 12 $20 bills." *Weaver*, 276 Kan. at 510-11.

The State argues that more than the fact that street crimes were charged should be considered before determining whether the delay was presumptively prejudicial. Specifically, in its cross-petition, the State argues Owens' "actions in requesting or acquiescing in continuances weigh against a conclusion that a delay is presumptively prejudicial." This circumstance—the reason for the delay—is *Barker*'s second factor. While *Barker* indicates that the second factor is "closely related" to the first factor, it does not support conflating the two. 407 U.S. at 530-31. The State in this case largely blurs the distinction between the first and second *Barker* factors, suggesting this court did so in

11

*State v. Davis*, 277 Kan. 309, 85 P.3d 1164 (2004), *State v. Bloom*, 273 Kan. 291, 44 P.3d 305 (2002), and *State v. Smallwood*, 264 Kan. 69, 955 P.2d 1209 (1998).

Indeed, in *Bloom* and *Smallwood* this court considered the factors as a whole rather than separately considering whether the delay was presumptively prejudicial. *Bloom*, 273 Kan. at 310-11; *Smallwood*, 264 Kan. at 75-76. But this approach deviates from the United States Supreme Court's approach of considering the delay as a triggering factor. See *Barker*, 407 U.S. at 530-31. And this court has also held that unless the delay is presumptively prejudicial the other factors need not be considered. E.g., *State v. Mann*, 274 Kan. 670, 701, 56 P.3d 212 (2002). The third case cited by the State, *Davis*, 277 Kan. at 334-35, recognized this language from *Mann*.

Yet, as Owens argues, the *Davis* court mentioned the defense's request for continuances in determining that a delay was not presumptively prejudicial. The *Davis* court, to that extent, conflated the first and second factors. But the court mainly noted much of the delay was caused by competency proceedings that led to the commitment and treatment of the defendant. These complications fall within the classic boundaries established in *Barker* about the complexity of the case. See *Barker*, 407 U.S. at 530-31. But, under *Barker*, the defendant's requests for continuances should have factored in only after a determination of presumptive prejudice. See 407 U.S. at 534-36.

*Barker'*s analysis conveys that even if a defendant pushes for delay in order to gain some advantage, the delay itself can be excessive and presumptively prejudicial. See 407 U.S. at 534-36. The United States Supreme Court gave only one example of a factor weighing on presumptive prejudice, and that example involved complexity. 407 U.S. at 531. Likewise, this court has cited complexity as the determinative factor separating a delay that is presumptively prejudicial from one that is not. Compare *Mathenia*, 262 Kan. at 894-95 (23-month delay between arrest and trial was not prejudicial in case in which

12

multiple inmates attacked prison guards; at least 30 inmates were considered viable suspects in the attacks; and indictments were returned against 12 inmates), with *Weaver*, 276 Kan. at 511 (14-month delay presumptively prejudicial in a simple and straightforward case).

Owens' counsel requested 10 continuances. After about eight of these, Owens filed a pro se motion for appointment of new counsel arguing his appointed counsel had requested monthly continuances from October 2012 to May 2013 without his consent or his appearance in court when the continuances were requested. At the hearing on that motion, Owens' counsel explained that Owens faced charges in this case as well as a second case. She then explained that this case had been delayed because of her trial schedule and because "Mr. Owens had asked me to talk to [the prosecutor] about working out a plea to have the cases consolidated. That is something that I have been speaking to [the prosecutor] about." Thus, as the State suggests, the delay may have at least partially been because Owens felt there might be an advantage to seeking consolidation of his cases and a plea agreement. Even so, *Barker* instructs that the length of the delay may be presumptively prejudicial. *Barker*, 407 U.S. at 530-31.

So was the 19-month delay presumptively prejudicial? Again, under *Barker*, the overarching consideration in determining whether the delay is presumptively prejudicial is whether the delay is reasonable given the complexity of the case. See *Barker*, 407 U.S. at 530-31. Here, Owens was charged with "ordinary street crime[s]." 407 U.S. at 531. Thus, referring to *Barker*'s example, "the delay that can be tolerated . . . is considerably less than for a serious, complex conspiracy charge." 407 U.S. at 531. The State's case largely hinged on Davis' and Officer Johnson's identification of Owens and the physical evidence recovered—Owens' hat and phone and the gun. This was a simple and straightforward case, and the nature of the evidence involved does not justify a 19-month delay between Owens' arrest and trial.

13

Perhaps, the State's arguments could be construed to suggest that this case was complex because Owens was charged in a second case and he sought a plea agreement resolving both cases. But the record does not allow us to determine whether the second case complicated the plea negotiations. Having two cases does not necessarily make plea negotiations more complex or justify a delay. They might. But we simply lack the record to make the determination because the district court's findings do not address that possibility.

We thus agree with the Court of Appeals that the 19-month delay was presumptively prejudicial under the circumstances of this case.

2. *Reasons for the delay*

The Court of Appeals found the reasons for the delay weighed against Owens. See *Owens*, 2017 WL 4082317, at *4-7. *Barker* explained the relevant considerations for this factor:

> "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." 407 U.S. at 531.

The Court of Appeals panel noted these considerations and also cited federal courts holding that "'[w]here the defendant's actions "were the primary cause of the delay," the second factor "weighs heavily against him."'" *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010) (quoting *United States v. Toombs*, 574 F.3d 1262, 1274

14

[10th Cir. 2009])." 2017 WL 4082317, at \*5. The panel noted that Owens' counsel requested 10 continuances, which the court granted, but the State made no requests for a continuance. 2017 WL 4082317, at \*5.

The State argues these continuances weigh heavily against Owens' speedy trial claim. Owens disagrees, arguing he did not consent to the continuances and could not object to the continuance because he was not present when his counsel made the requests. Citing *State v. Brownlee*, 302 Kan. 491, 508, 354 P.3d 525 (2015), Owens noted he had a right, under K.S.A. 2012 Supp. 22-3208(7), to be present during a motion hearing on a continuance. He then argued the failure to assure his presence was error and the continuances should not be counted against him. He then implies the delays should be the responsibility of the State because, "[w]hile not a deliberate attempt to delay, it is a negligent delay where the government failed to adequately protect Mr. Owens' speedy trial rights by assuring his presence and consent."

The panel agreed with the State's contentions and concluded that Owens provided no authorities supporting his assertion the State had been negligent. See 2017 WL 4082317, at \*5. As to the negligence claim, the panel concluded:

> "Owens' contention that the delay resulted from the State's negligence does not automatically succeed. To begin with, it is unclear how the State would have committed negligence by failing to ensure Owens' presence at the continuance hearings, and outside of making this bald assertion, Owens has provided no additional authority or argument on appeal. It is a well-known rule of this court that failing to support an argument with pertinent authority or explaining why an argument is sound, despite a lack of pertinent authority, is akin to failing to adequately brief an issue. *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015)." *Owens*, 2017 WL 4082317, at \*5.

15

Thus, the panel held Owens had not properly briefed the issue. See *Owens*, 2017 WL 4082317, at *5-6.

Owens does not dispute this conclusion on review. And arguments abandoned before the Court of Appeals generally cannot be raised for the first time in a petition for review. See *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 161, 298 P.3d 1120 (2013). We, thus, decline to charge any of the delay to the State based on a theory it was negligent.

As to Owens' right to be present, before the Court of Appeals panel, he relied only on a statutory right under K.S.A. 2012 Supp. 22-3208(7) by citing the statute and *Brownlee*, 302 Kan. 491. *Brownlee* specifically noted it was not deciding whether a defendant had a constitutional right to be present at a continuance hearing. 302 Kan. at 508. The panel noted this limitation in *Brownlee* and that Owens had not cited authority for a constitutional right to be present at the continuance hearings. In reaching that conclusion, the panel referred to one basis for the constitutional right to be present—an accused's right to be present at all critical stage of the proceeding—and noted that Owens had not made this argument. *Owens*, 2017 WL 4082317, at *5. Owens admits this in his petition for review.

Yet Owens asks us to apply recent caselaw recognizing that a continuance hearing may be a critical stage of criminal proceedings. See, e.g., *State v. Wright*, 305 Kan. 1176, 1178, 390 P.3d 899 (2017). *Wright* was decided after Owens had filed his brief in the Court of Appeals. This explains why he now cites it but failed to do so in the Court of Appeals. But this timing does not explain why Owens did not argue before the Court of Appeals that he had a constitutional right to be present at the continuance hearings. Again, issues not presented to the Court of Appeals cannot be raised on a petition for review. *Snider*, 297 Kan. at 161.

Focusing on Owens' statutory right, the panel found persuasive the State's arguments that Owens caused the delay. The panel pointed to the transcript of the hearing on Owens' pro se request for new counsel and noted that Owens' counsel told the district court that Owens asked her to see if she could get his cases consolidated and could negotiate a plea arrangement disposing of both cases. His counsel explained this had required several continuances. The prosecutor confirmed Owens' counsel's statements. Owens did not dispute these representations at the hearing. In fact, his pro se motion had said the same thing. *Owens*, 2017 WL 4082317, at *6.

Based on these circumstances, the panel concluded that despite Owens' later objection to the continuances, at the time of many of the early continuances "he not only acquiesced to the continuances but also wanted the continuances. As a result, Owens' decision to seek a plea agreement with the State contributed to the delay of his trial." *Owens*, 2017 WL 4082317, at *7.

In his petition for review, Owens repeats his arguments about not being present or agreeing to the continuances. But he does not discuss the hearing on his pro se motion. Along with the points made by the panel, we note that at the hearing, the district court asked Owens if he was willing to withdraw his motion to change counsel if the court set the case for a "hard jury trial" setting. Owens responded, "Yes, sir." While Owens did not explicitly waive his speedy trial right, he acquiesced in another continuance to his case. At that time, plea negotiations were still underway. Eventually, Owens declined the plea offer and asserted his right to trial.

After trial, Owens reasserted his speedy trial argument in a motion for new trial. The district court denied the motion, noting that under the statutory speedy trial statute, a defendant need not be present if counsel makes the continuance request after consultation

17

with the defendant. K.S.A. 2018 Supp. 22-3402(g). The court found the continuances here complied with the statutory requirement. Implicitly, the findings reveal Owens was aware his counsel was seeking the continuances and agreed to them in the moment, even if several months later he objected. And the arguments of both Owens' counsel and the prosecutor at the hearing support this conclusion.

Both counsel reminded the district judge of the procedural history of the plea negotiations in the two cases. Owens' counsel clarified that the initial negotiations "only pertained to [Owens' other case]." The district court judge stated he was aware of those negotiations and that Owens had been a part of a hearing in the other case at which the court had been informed of the negotiations. Counsel then noted that Owens participated in plea negotiations in his other case right up to the point of trial in July 2013. Owens' counsel said the parties "conduct[ed] further plea negotiations in this case" after Owens' trial in the other case but "[t]hose plea negotiations also failed." The State agreed with Owens' counsel's account of the attempted plea negotiations stating they "were in constant contact . . . about these two cases trying to work on disposing of these cases [in a way] that was reasonable and beneficial for the defendant and that would . . . be a fair disposition for the State and the victims." After the State and Owens' counsel informed the district court of the procedural background underlying the delay, the district court asked Owens: "[W]hat else would you like to tell me?" He responded: "That's pretty much all I have, Your Honor."

The court then rejected Owens' claim. The district court weighed the fact Owens had been in negotiations on both cases, had been in consultation with counsel about the same, and had not been present at all of the continuance hearings. The record supports the conclusion of the district court. It shows Owens was still trying to resolve this case by plea agreement after he withdrew his motion to change counsel, and Owens was aware those negotiations contributed to the delay. While Owens asserted he did not consent to

18

the continuances, he did not rebut the statements that the continuances were because of plea negotiations, which he had requested and was aware of.

Based on the statutory speedy trial argument presented to the district court about Owens' right to be present, the Court of Appeals correctly determined Owens' counsel's requests for continuances should be weighed against him in considering the reasons for the delay. See *Larson*, 627 F.3d at 1208.

### 3. *Assertion of the right*

The parties agreed Owens asserted his constitutional speedy trial rights by objecting to continuances in his pro se motion for new counsel and his pro se posttrial motion to dismiss. The Court of Appeals found this factor weighed in favor of Owens. See *Owens*, 2017 WL 4082317, at *7. The parties do not dispute this finding on review. But we note again that while Owens asserted an objection through his pro se motion for new counsel, he withdrew the motion and essentially acquiesced in the continuances.

### 4. *Prejudice*

Owens argues he was prejudiced by the delay. In analyzing the prejudice factor, *Barker* identified three interests the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit possible impairment of the defense. 407 U.S. at 532. Owens addressed the first two considerations in his brief to the Court of Appeals. But he did not address either in his petition for review. Rather, Owens only contends the delay was prejudicial to his defense.

19

Owens points out that the victim, Davis, had to rely on Officer Johnson's report to refresh his recollection at trial. Davis' fading memory was explained to the jury by noting the length of time that had passed between the events and the trial. Owens argues "the faded memory covers up the details used to challenge the identification, and leave only the identification remaining. The lengthy delay in going to trial prevented Owens from effectively questioning Davis on his actual recollection of the robbery."

In fact, however, Owens cross-examined Davis about the discrepancies between Owens' dress and physical appearance and the description of the suspect Davis gave to Officer Johnson. Davis described the suspect as a black male, around 6 feet tall with a stocky build, appearing to be between the ages of 20 to 21 years old. Officer Johnson asked Owens his height and weight during post-arrest booking. Owens responded he was 6 feet, 2 inches tall and weighed about 195 pounds. The biggest discrepancy in Davis' physical description of the suspect is the age. Owens was only 17 years old at the time of the incident. Davis' description pointed to someone three to five years older. Owens did not press this point in cross-examination; he did not ask Davis what caused him to believe the suspect was in his early twenties as opposed to being somewhat older or younger. One other discrepancy was the fact Davis described the suspect as wearing a dark t-shirt and blue jeans. But Owens was wearing a red t-shirt at the time of his arrest and pajama pants.

Davis provided a reasonable explanations for the differing accounts—the fact it was dark out and the encounter was brief. Overall, however, Owens successfully punched holes in Davis' identification and the jury had several points to weigh as credibility considerations. And his lack of memory at the time of trial likely reduced his credibility.

Owens has failed to show his defense was impaired as a result of the delay, and he abandoned any arguments about oppressive pretrial incarceration or anxiety and concern of the accused in his petition for review. Thus, Owens has not shown he was prejudiced by the delay.

CONCLUSION

The length of the delay was excessive given the relative simplicity of the case, so a presumption of prejudice arose from that delay. This factor weighs in Owens' favor and merits consideration of the other factors that go into the balance. But the presumption of prejudice that arose from that delay is offset by the circumstance of the delay being largely attributable to the fact Owens had multiple cases pending in which he was represented by the same attorney and was seeking a favorable plea agreement in both cases. And although Owens was ultimately unsuccessful, he sought to consolidate the cases as part of a plea agreement. The reasons for the delay weigh against Owens. As to the third factor, Owens complained about the delay, which weighs in his favor. But the evidence supports that Owens wanted his attorney to seek consolidation of his cases and that these efforts resulted in some delay, which diminishes his later attempt to complain about the delay. As to the fourth factor, Owens has not shown he was prejudiced by the delay. As a result, the final factor weighs against Owens.

Balancing the four factors together and considering the actions of both the State and Owens, the reasons for the delay and the lack of prejudice counter the presumption of prejudice arising from the 19-month delay. While Owens objected, his objections were partially withdrawn, and overall he has failed to show his constitutional speedy trial rights were violated.

21

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

PATRICK J. MCANANY, Senior Judge, assigned.