NOT DESIGNATED FOR PUBLICATION

No. 124,253

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KEN'DUM DAN'SHA OWENS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Opinion filed September 23, 2022. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., MALONE and CLINE, JJ.

PER CURIAM:  Ken'dum Dan'Sha Owens appeals the district court's denial of his K.S.A. 60-1507 motion. A jury convicted Owens in 2013 of aggravated robbery, criminal use of weapons, and criminal deprivation of property, and the district court sentenced him to 206 months' imprisonment. After his convictions were affirmed on direct appeal, Owens filed a K.S.A. 60-1507 motion, claiming ineffective assistance of counsel. Following an evidentiary hearing, the district court found that Owens' trial counsel was ineffective for not moving to suppress an unnecessarily suggestive showup identification, but that Owens was not prejudiced by this deficient performance. Owens appeals, arguing

1

that the district court erred in finding that his trial counsel's deficient representation did not prejudice him. After thoroughly reviewing the record and the parties' arguments, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Owens is serving 206 months in prison for aggravated robbery, criminal use of weapons, and criminal deprivation of property. The Kansas Supreme Court summarized the relevant facts of Owens' case as follows:

"In the late evening hours of February 16, 2012, two men approached Nathan Davis after he exited his vehicle in the parking lot of his apartment complex. One of the men—later identified as Owens—pointed a gun at Davis and demanded his car keys. Davis handed over his keys, and the two men got into Davis' vehicle and drove away. Davis immediately called 911 and told a dispatcher his car had been stolen at gunpoint. He described the man holding the gun as a black male, 20 to 22 years old, about 6 feet tall with a stocky build, and wearing a black hooded sweatshirt, red or black ball cap, and blue jeans.

"A nearby law enforcement officer, Brent Johnson, heard the information relayed by dispatch and saw a vehicle matching the description of Davis' car stopped in the middle of the street a few blocks from Davis' apartment. Officer Johnson activated his patrol car's sirens and emergency lights. The man seated in the driver's seat of Davis' vehicle exited and ran away. Officer Johnson chased the man on foot through the surrounding residential area but lost sight of him a few minutes into the pursuit. Officer Johnson described the suspect as a black male wearing blue jeans, white tennis shoes, a red baseball cap, and a black jacket.

"Officer Johnson maintained a perimeter around the area where he believed the suspect was likely hiding while waiting for backup officers to arrive. A K-9 officer soon arrived and began searching the area with his police dog. The officers found a black male—later identified as Owens—wearing a black hooded sweatshirt, white tennis shoes, and brightly colored pajama pants hiding behind a tree in the back yard of a nearby residence. The officers arrested Owens and discovered a red and black baseball cap in the

same yard. The officers also located a silver handgun in the yard of another nearby residence. But they did not find any blue jeans.

"The officers brought Davis to the location where they held Owens. Davis identified Owens as the man who pointed the gun at him and stole his car. Officers found a cell phone in Davis' car, and they later identified it as belonging to Owens.

. . . .

"At trial, Officer Johnson identified Owens as the man he chased and officers later arrested. Officer Johnson testified Owens was wearing blue jeans when he began chasing him but was wearing brightly colored pajama pants when he was apprehended. A post-arrest photo of Owens was admitted into evidence showing the pajama pants and other clothing he was wearing at the time of his arrest. Davis identified the man in the photograph as the person who stole his car at gunpoint but noted the difference in pants. Davis also identified the gun the officers discovered as the one Owens had used. Owens took the stand and claimed his phone had been stolen while he was playing basketball near where he was arrested. He denied being involved in the aggravated robbery of Davis.

"The jury convicted Owens as charged. He appealed his convictions and sentence, raising five issues. The Court of Appeals affirmed, finding no reversible error. [Citation omitted]." *State v. Owens*, 310 Kan. 865, 866-68, 451 P.3d 467 (2019).

In 2019, Owens filed a K.S.A. 60-1507 motion alleging ineffective assistance of trial and appellate counsel on many grounds. The motion was assigned to the same district judge who presided over Owens' criminal trial. The district court summarily denied relief on most of Owens' claims but ordered an evidentiary hearing on his claim that his trial counsel, Pamela Parker, provided ineffective assistance of counsel because she did not move to suppress the showup eyewitness identification by Davis, and one other claim not challenged on appeal about how Parker handled the cell phone evidence.

At the evidentiary hearing, Owens testified about the night of his arrest. He said that after the police officers found him hiding behind the tree, the arresting officer handcuffed him and placed him in the back of the police car. Owens said the officers drove him around the block to where there were "around 30" officers, and, while still

3

handcuffed, he was asked to stand in front of a spotlight. Owens said that an individual got out of the car that was spotlighting him and officers asked the individual if he recognized Owens. Owens testified that after reading the police reports he realized that the officers placed him in a showup lineup. Owens testified that this eyewitness identification was admitted at trial, but Parker did not move to suppress the evidence or object that the showup was suggestive.

Parker testified that she did not move to suppress the eyewitness identification because there was nothing in the police reports that led her to believe the showup was unduly suggestive. Parker testified that she did not think a motion to suppress "would be successful or necessary." She also testified her strategy was to attack the credibility of Davis' identification through her cross-examination and closing argument.

Parker testified that, even if she had successfully moved to suppress the eyewitness identification, the outcome of the trial would have been the same. Parker pointed to Officer Johnson's testimony that he saw Owens get out of the car and run and the discovery of Owens' cell phone in Davis' car as other evidence identifying Owens as the carjacker. She emphasized that she argued at trial that both Davis and Officer Johnson said the assailant was wearing blue jeans, but Owens was arrested wearing brightly colored pajamas and jeans were never found despite extensive police efforts.

On May 24, 2021, the district court filed a 22-page order denying Owens' K.S.A. 60-1507 motion. The district court found that the showup identification was unnecessarily suggestive, and that Parker's representation fell below an objective standard of reasonableness because she should have filed a suppression motion. But the district court found that had Parker filed a suppression motion, it would not have been granted because Owens could not show a substantial likelihood of misidentification. The district court also concluded that "Owens has not shown that there is a reasonable probability that, but for Parker's failure to file the motion to suppress, the result of the proceeding

4

would have been different." The district court supported this conclusion by pointing out that Officer Johnson also identified Owens as the person who fled Davis' car in the same vicinity as the robbery, and that the officers found the ball cap and silver handgun nearby when they arrested Owens. Owens timely appealed the district court's judgment.

DID THE DISTRICT COURT ERR IN DENYING OWENS' K.S.A. 60-1507 MOTION?

On appeal, Owens claims the district court erred in denying his K.S.A. 60-1507 motion. Owens argues that the district court erred when it found that Parker's deficient performance did not prejudice him. Owens argues that the outcome of the trial would have been different had Parker moved to suppress the showup identification because it caused a substantial likelihood of misidentification. He emphasizes the dangers and reliability problems inherent in eyewitness identification. Owens does not raise any of the other issues raised in his motion filed in district court. Issues not briefed on appeal are waived or abandoned. *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021).

The State argues that Owens' claim fails because "the same judge who presided over trial expressly ruled that he would not have suppressed the show-up identification even if [Parker] had filed such a motion." The State also argues that even if the showup identification had been suppressed, the outcome of the trial would not have been different because the "overall strength of the State's case was overwhelming."

After a full evidentiary hearing on a K.S.A. 60-1507 motion, an appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence and can support the district court's legal conclusions. An appellate court exercises unlimited review over the district court's ultimate legal conclusions. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

5

To prevail on a claim of ineffective assistance of counsel, Owens must show that his counsel's legal representation fell below the required constitutional standard and that he suffered legal prejudice as a result, meaning there is a reasonable probability that the jury would have reached a different result but for the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Here, the district court found Parker's performance ineffective, and the State is not challenging this finding. Thus, the only issue before this court is whether the deficient performance was prejudicial. Under the second prong, Owens must show with reasonable probability that Parker's deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Khalil-Alsalaami*, 313 Kan. at 486.

The outcome of this case turns on whether Parker should have moved to suppress the showup identification of Owens made by Davis on the night of his arrest, and if so, whether Parker's failure to file such a motion affected the outcome of the trial. Our Supreme Court has articulated a two-step process for district courts to follow in deciding whether an eyewitness identification is admissible evidence. The first step examines whether the police procedure used to obtain the identification was unnecessarily suggestive. If so, the district court moves to the second step and considers whether there was a substantial likelihood of misidentification under the totality of the circumstances. *State v. Cruz*, 297 Kan. 1048, 1059, 307 P.3d 199 (2013).

After hearing the evidence at the K.S.A. 60-1507 motion, the district judge, who was the same judge that presided over Owens' criminal case, found that he would have denied a motion to suppress the showup identification had one been filed because Owens could not show a substantial likelihood of misidentification—the second step of the *Cruz* two-step analysis. The record supports the district court's finding because although the showup identification was unnecessarily suggestive, Owens was arrested a short time

after the robbery in the same vicinity as the robbery and Davis expressed great certainty in identifying Owens as the man who took his car at gunpoint.

More importantly, the district court also found that even if Davis' showup identification of Owens on the night of the arrest had been suppressed, the outcome of the trial would have been the same and so there was no prejudice. Put another way, even if the jury had not heard the evidence about Davis identifying Owens on the night of the arrest, the State's evidence at trial was so overwhelming that the jury would have found Owens guilty of the charges. This finding is supported by several key factors.

First, as the State points out in its brief, Davis provided an in-court identification at trial of Owens as the man who robbed him, and Owens has never separately challenged that identification. Owens has never asserted that any misidentification that may have been caused by the suggestive showup identification on the night of his arrest tainted Davis' identification so much that he could not properly identify Owens at trial.

Second, Davis was not the only witness who identified Owens at trial. Officer Johnson identified Owens as the man he chased after he saw Owens jump out of Davis' car. Officer Johnson spotted Davis' car a short time after Davis called 911 and only a few blocks from Davis' apartment. Although Officer Johnson lost sight of the suspect for a few minutes, he described him as a black male wearing blue jeans, white tennis shoes, a red baseball cap, and a black jacket.

Third, Davis had reported that he was robbed at gunpoint and his assailant was wearing a black hooded sweatshirt, a red or black ball cap, and blue jeans. Officer Johnson added that the suspect was wearing white tennis shoes. When Owens was arrested by the police a short time later in the same area of the robbery, he was wearing a black hooded sweatshirt and white tennis shoes. The police found a red and black baseball cap in the same yard and a silver handgun in a nearby yard.

7

Fourth, the police found Owens' cell phone *inside* Davis' car. Owens admitted at trial that the phone belonged to him. He explained that his phone had been stolen earlier in the evening but provided no other evidence to corroborate that story. The discovery of Owens' cell phone in Davis' car was damaging physical evidence linking Owens to the crimes that remained part of the State's case even without the eyewitness identifications.

One weakness in the State's case was that both Davis and Officer Johnson described the suspect as wearing blue jeans, but Owens was wearing pajama bottoms when he was later arrested. Although the police found the baseball cap and handgun nearby, they did not find any blue jeans. Davis also described his attacker as someone between 20 and 21 years old. Owens was only 17 years old when the crimes were committed. At the criminal trial, Parker vigorously cross-examined the witnesses about the inconsistencies in descriptions and the fact that Owens was wearing pajama bottoms when he was arrested, but the jury still found the State's evidence supported a guilty verdict.

In summary, the district court's factual findings were supported by substantial competent evidence and supported the court's legal conclusion that Owens failed to show he was prejudiced by his trial counsel's performance. Owens failed to meet his burden of providing enough evidence to support his ineffective assistance of counsel claim to undermine confidence in the outcome of his trial. As a result, we conclude the district court did not err in denying Owens any relief in his K.S.A. 60-1507 motion.

Affirmed.